CASILY *v.* THE STATE.

CIRCUIT COURT.—*Adjourned Term.—Record.*—The circuit court has full power
to adjourn before the lapse of the time allowed by law for its term, to a
day beyond such time and before the next regular term. The propriety of
such adjournment is a question for that court alone, and its decision thereon
cannot be reviewed by any other court; nor is it required that the reason
for such adjournment be put on record.

CRIMINAL LAW.—*Indictment.*—The fact that in an indictment consisting of
several counts, in all of which the same felony is charged, some of the
counts, charging the offense against the same persons charged in the others,
include also another person as a defendant, does not render the whole in-
dictment bad.

SAME.—*False Pretenses.—Bank Check.*—A false representation by one person
to another that the former owns a check on a bank, of a certain specified
value, is, other material facts existing, a false pretense within our statute.

SAME.—*Loan to Enable to Violate the Law.*—It is no defense to a charge of
obtaining money by false pretenses, that the money was loaned by the pros-
ecuting witness for the purpose of enabling the defendant to violate the
law by wagering with a third person.

APPEAL from the Randolph Circuit Court.

FRAZER, C. J.—The law authorizes the Randolph circuit
court to sit four weeks at its regular terms. At the March
term of 1869, on the fifteenth day of the term, the appel-
lant and one Samuel Clarke, being confined in jail upon a
criminal charge, though not yet indicted, filed their affida-
vit showing that on account of absent testimony they could
not go to trial during that term; and thereupon the court
ordered as follows: "It appearing not necessary that said
cases should be continued until the next regular term 'of
this court, and for the purpose of releasing the county from
the expense of supporting said prisoners in jail until the
next term of this court, and also as an act of humanity to
said prisoners, it is hereby ordered by the court that a term
of this court be held  *  *  on the 27th day of April, 1869,
for the purpose of trying said prisoners on said charge, and
for the purpose of trying any business that may remain at
the close of the present term undisposed of. It is further

ordered that the clerk issue a *venire* and cause the regular panel of petit and grand jurors to be in attendance at said special term. It is further ordered that notice of said special term be given," &c. The notice given followed the terms of the order. Two days later the court continued all pending business until the 27th of April, and then adjourned until that day. On the 27th of April, the court met, and an indictment, entitled in the margin, "March adjourned term, 1869," was returned against Casily, Clarke, and one Porcupile, jointly. The two former pleaded in abatement, alleging the facts concerning the appointment of this term and notice thereof, as already stated, to which a demurer was sustained; and thereon arises the first question for consideration.

We have, then, this state of affairs upon the record: during the regular term, the court appointed a time for the trial of this defendant and the disposition of any business remaining undisposed of at the close of the regular term. Subsequently, before the period had expired which was allowed by law for the term, there was an adjournment until that time, for the disposition of this cause and all other matters before the court not disposed of. It does not appear, however, that any business other than this remained, and we may therefore indulge whatever presumption upon that subject will best support the action of the court.

It is contended, that the adjournment until April was without authority and void, and to support this position the appellant relies upon section 793 of the code, which enacts, that "if any judge * * shall adjourn the court before having gone through the business pending, and before the expiration of the time fixed by law, the record must show the reason for adjournment." This, however, has reference only to adjournments until the next regular term, as was said in *Morgan* v. *The State*, 12 Ind. 448, and cannot, therefore, as we think, influence the decision of the question now before us. We would not understand by the opinion in *Morgan* v. *The State* that it was intended to apply the stat-

ute above cited to such a case, though the language is a little ambiguous. But it would seem that it was probably so intended. At least, the same judges, in *Slaughter* v. *Gregory,* 16 Ind. 250, did so apply it, citing *Morgan* v. *The State.*

The act of 1855, section 1 (2 G. & H. 11), gives the courts as full power to adjourn before the close of a term, to a day beyond the time limited by law for the regular term, as they possess to adjourn at noon on one day until the morning of the next day, or at the end of one term until the commencement of the next. The propriety of the adjournment, in either of the first two cases, is quite another thing; but that is a question for that court alone, and no other court can review its decision thereon. So, too, when it adjourns finally until the next regular term, before the lapse of the time allowed for its term. True, in that case, and only in that case, it must, if the business be unfinished, put the reason for such adjournment on record. But this court cannot consider whether the reason given was good or bad. It is a curious enactment which requires it. It can well be seen that the legislature may have intended it to operate as a restraint upon such final adjournments without good reason, inasmuch as pending business would thereby be neglected; but we are not inclined to believe that it was intended to make such adjournments void, or to injuriously affect suitors, by putting it out of the power of the court at the next regular term to proceed with the business which ought previously to have been done. And if not, it could not, for a stronger reason, deprive it of authority to act upon such business at the time fixed for an adjourned term.

The statute if held to be directory only, will accomplish every good purpose which the legislature had in view, and a vast amount of mischief will be prevented. If by oversight or intention it is omitted to state the required reason, and subsequent proceedings in causes are thereby rendered null, the legislature has invented a trap for suitors which no action of theirs can prevent. Such a construction is, according to all authority, to be avoided, if possible. Lord

MANSFIELD said, "there is a known distinction between the circumstances which are of the essence of a thing required to be done by an act of parliament, and clauses merely directory." *Rex* v. *Loxdale*, 1 Burr. 445.

*Morgan* v. *The State, supra,* held this statute to be imperative, assuming, too, that the last business day of a term of court necessarily closed at midnight. Of course, every other day of the term must extend till the same hour. It is probable that further consideration might result in the conclusion that the legislature has used no language contemplating that any court day must be other than such hours thereof as are usually devoted to the transaction of business, or denying to judges, jurors, and officers of courts, that opportunity for repose which is generally permitted to other men and essential to health and business capacity. Sometimes a very literal adherence to the words of a statute will, not only defeat its plain intent, but involve a train of absurdities; and nothing is better settled than that, in such cases, the strict letter should not govern.

In any view, therefore, we think that the demurer was correctly sustained.

A motion to quash the whole indictment was sustained as to the second and fourth counts, and overruled as to the first and third. There was a verdict of guilty upon the first count, and no verdict upon the third, which, of course, was equivalent to an acquittal on that count. It is therefore needless to consider the third count. It and the first charged the false pretenses against the appellant and Porcupile, while the second and fourth included also Clarke. This, it is urged, rendered the whole indictment bad, upon the authority of *The State* v. *Smith*, 8 Blackf. 489. The doctrine of that case is, that to charge distinct felonies in separate counts is bad, but not so if it be the same felony charged in different forms. As the latter, and not the former, was done in this case, the authority does not sustain the proposition of the appellant.

It is claimed, on the authority of *The State* v. *Magee*, 11 Ind. 154, and other like cases, that the first count was bad and should have been quashed. But we can perceive no parallel between this case and those cited. Here, effective false pretenses of existing facts are averred; there, none such were alleged. See *Clarke* v. *The State*, at this term, *post*, p. 67; *Rex* v. *Parker*, 7 C. & P. 825.

We cannot protract this opinion by noticing in detail each objection urged against it. In short, therefore, we are of ·opinion that the count was sufficient.

The jury was instructed, that proof of a false representation by the defendant to the prosecuting witness that he owned a check on a bank in Dayton, of the value of five hundred dollars, would, if the other material averments were also proved, be sufficient to warrant a verdict of guilty. The proposition of the appellant is, that such a false pretense is not within the statute, and consequently, that the court erred in giving this instruction. It is true that one's own check on a bank where he has neither funds nor credit is not a false token—it is merely a written falsehood— the offer of such a check being a representation that he has such funds or credit. It is also true that such a transaction by which the property of another is obtained is probably not indictable at common law as a cheat. It is so laid down in the book cited in argument, 2 Bishop Crim. Law, § 146. But it is an offense within a statute like ours, being a false pretense. 2 Whart. Am. Crim. Law, §§ 2107, 2108.

The court refused to instruct that there should be an acquittal if the money obtained was loaned for the purpose of enabling the defendant to violate the law by wagering with Clarke.

We cannot regard the doctrine contained in the instruction asked as sound law. We think that the text book cited in its support, 1 Bishop Crim. Law, § 565, is against it. The only cases looking that way, which we have been able to discover, are *The People* v. *Stetson*, 4 Barb. 151, and *The People* v. *Clough*, 17 Wend. 351, which contain *dicta* to the

effect that their statute was not intended to protect any but innocent persons or those not in any degree *particeps crimi-nis* with the defendant. *Commonwealth* v. *Morrill,* 8 Cush. 571, is the other way, and evinces better consideration. Whatever foundation the language of the preamble of the English statute, 30 Geo. II., c. 24, may have afforded for the strange conclusion of Justice COWEN, that that act meant not to punish such swindling unless "industrious families" were the victims of it, there is certainly no reason for such a construction of our act against false pretenses. Like most other offenses defined by our criminal laws, its language cannot by any fair construction be limited to cases where the outrage is practiced upon some particular class of the community. Our criminal laws are based upon a broader, sounder, and wiser principle. We do not sanction theft from a thief, or swindling even when practiced upon one who would loan his money to be used in making a wager. Our policy would punish both thieves, instead of licensing one of them and thereby tempting others to evil practices provided they commit their offenses against other criminals. The subject hardly admits of grave discussion.

The only remark which need be made upon the evidence is, that, in our opinion, it was ample to sustain the verdict of guilty.

Judgment affirmed, with costs.

*T. M. Browne* and *E. L. Watson,* for appellant.

*D. E. Williamson,* Attorney General, for the State.