# MARTINS v. STATE.

CRIMINAL LAW—FALSE PRETENSES—OBTAINING MONEY UPON A
CHECK—REPRESENTATION OF OWNERSHIP—REPRESENTATION BY ACTS
—ELEMENTS OF OFFENSE—INDICTMENT AND INFORMATION—NECES-
SARY AVERMENTS—EVIDENCE—SUFFICIENCY.

1.  A false pretense of ownership of a bank check payable to
    bearer for the purpose of obtaining money thereon con-
    stitutes a false pretense within the meaning of the statute
    punishing as a cheat the obtaining of property by a false
    pretense.

2.  Whether the acts of an accused together with his statements
    at the time amounted to a representation of ownership of a
    bank check upon which money was obtained, or what the
    accused intended by such acts and statements, is a ques-
    tion for the jury.

3.  Upon the trial of a defendant for obtaining money by false
    pretenses it was shown that he had wrongfully obtained
    at the postoffice a letter not addressed to or intended for
    him, enclosing a bank check indorsed by the payee in
    blank, and that, with the check in his possession, he asked
    another to cash it, stating that he got it from the mail,
    and thereupon indorsed the check and was given the face
    value in money.  *Held,* that the acts and statements of the
    defendant constituted a representation that he was the
    owner or entitled to cash the check as much so as though
    he had so stated orally.

4.  Under Section 5143, Rev. Stat. of 1899, punishing as a cheat
    the obtaining of property from another person by false
    pretenses with intent to cheat or defraud such person of the
    same, it is necessary to constitute the offense that the
    property be obtained from the owner, or one having a spe-
    cial ownership therein, by means of a false pretense, with
    the intent to defraud the person from whom the property
    is obtained, and that such person be actually defrauded.

5.  The crime of obtaining property from another person by
    false pretenses with intent to defraud such person of the
    same is statutory, and the indictment or information
    should set forth all the requisites of the statute to consti-
    tute the crime, including a correct statement of the owner-
    ship of the property so obtained.

6.  The averment of ownership of property charged to have
    been obtained by false pretenses with intent to defraud the

person from whom it was obtained is material and must be proved as laid.

7. An information charged the defendant with having obtained upon a check by false pretenses money from a person named with intent to defraud him and another person also named, and for the purpose of obtaining their property. The evidence disclosed that the money did not belong to the person from whom it was obtained or to either of the persons named in the information, but was the money of the employer of the person from whom it was obtained. *Held,* that proof of ownership in such other party was inconsistent with the ownership alleged, and in the absence of allegations showing the true ownership and the agency and authority of the person from whom the money was obtained to so dispose of it, is to be considered as proof of a separate and distinct crime, and, therefore, there was a failure of proof as to the crime charged.

[Decided December 22, 1908.]                    (98 Pac. 709.)

ERROR to the District Court, Carbon County; HON. DAVID H. CRAIG, Judge.

Romon Martins was charged upon information, tried and convicted of the crime of obtaining money by false pretenses, and prosecuted error. The information and material facts are set out in the opinion.

*Chris. Mathison,* and *L. E. Armstrong,* for plantiff in error.

A check indorsed in blank by the payee is payable to the bearer. (Laws 1905, Sec. 9, p. 41.) The check in question was, therefore, negotiable by delivery, and Mayer or Freedman, his principal, became the owner and holder thereof, and having obtained a good title to the check was not defrauded. (Laws 1905, Sec. 30, p. 44.) To constitute the crime of obtaining property by false pretenses it is necessary that an actual fraud be accomplished. (1 McClain Cr. Law, Sec. 665; 19 Cyc. 393, 411; Morris v. People, 4 Colo. App. 136; Berry v. State, 97 Ga. 202; McGhee v. State, 97 Ga. 199; *In re.* Cameron, 44 Kan. 64; State v. Asher, 50 Ark. 427; Morgan v. State, 42 Ark. 131; State

v. Matthews, 44 Kan. 596; People v. Wakely, 62 Mich.
297; Johnson v. State, 75 Ind. 553; People v. Jordan, 66
Cal. 10; State v. Phifer, 65 N. C. 321; Mathena v. State,
15 Tex. App. 473; State v. Palmer, 50 Kan. 318; State
v. Clark, 46 Kan. 65; Watson v. People, (N. Y.) 41 Am.
Rep. 397; 2 Bish. Cr. Proc., Sec. 163.) It is true that the
prosecutor is entitled to that which he expected, and that
it is sufficient to constitute the offense if he does not receive
it, even though he does receive something else of equal
value. (Rucker v. State, 114 Ga. 13; Culver v. State, 86
Ga. 197; State v. Mills, 17 Me. 211; Bartlett v. State, 28
O. St. 669.)

There was no proof of representation as to ownership
of the check. While it is true that representation may be
shown by conduct as well as words, the act of the defend-
ant in passing the check amounted only to a representation
that it was true and genuine, which in fact it was. And
since he did not transfer to the prosecutor a false token it
was necessary to show by his statements that he represented
himself to be the owner of the check. (19 Cyc. 402; 1 Mc-
Clain Cr. L., Secs. 661, 666, 675; 1 Wigmore's Ev., Sec.
320; State v. Southall, (Minn.) 79 N. W. 1007; People
v. Luttermoser, (Mich.) 81 N. W. 565; State v. Walton,
114 N. C. 783; People v. Gates, 13 Wend. 311; Wagoner
v. State, 90 Ind. 504; Com. v. Hulbert, 12 Metc. 446;
State v. Adams, 92 Ind. 116; State v. Layman, 8 Blackf.
330; People v. Donaldson, (Cal.) 11 Pac. 681.) The rule
in all cases of the sale of property seems to be that there
must be false statements. (State v. Dorr, 33 Me. 498;
Com. v. Lee, 149 Mass. 179; Moore v. People, 190 Ill. 331;
Thomas v. People, 113 Ill. 531; State v. Moore, 111 N. C.
667; State v. Jackson, (Kan.) 22 Pac. 619; Jenkins v.
State, 97 Ala. 66; State v. Byam, 23 Or. 568.) A vari-
ance between the description of the pretense in an indict-
ment and the proof is fatal. (19 Cyc. 438-439.) The pre-
sentation of the check was no more than a representation

(11)

that the defendant had a right to present it and to demand payment thereof. (Foote v. People, 17 Hun, 218; 1 Daniel's Neg. Inst., Sec. 573.) Mayer's only concern was whether he was acquiring the check in due course of business. (1 Daniel's Neg. Inst., Sec. 780; Laws 1905, p. 46. Sec. 52.) Defendant's possession of the check created the presumption that he was the owner. (4 Wigmore's Ev., Sec. 2515; Bank v. Emmitt, (Kan.) 35 Pac. 213; Saunders v. Bates, (Neb.) 74 N. W. 578; New England &c. Co. v. Robinson, (Neb.) 76 N. W. 415; Battersbee v. Calkins, (Mich.) 87 N. W. 760.)

The warranty of ownership implied by law in the indorsement of the check is not sufficient as a representation. (1 McClain Cr. L., Sec. 676; State v. Dorr, 33 Me. 498; Watson v. People, 87 N. Y. 561; State v. Butlen, 47 Minn. 483; State v. McDonald, (Kan.) 52 Pac. 453; Jackson v. People, 18 Ill. App. 508.) A false statement to constitute a false pretense must have reference to past or existing facts. (1 McClain Cr. L., Sec. 678.)

It must appear both by allegations and proof that the false pretense was relied upon by the person parting with his property as an inducement thereto, though it is not necessary that the false pretense be the only inducement. (Haines v. Ter'y, 3 Wyo. 167; 1 McClain Cr. L., Secs. 684, 686; 19 Cyc. 445; Gilett Cr. L., Sec. 293.) It was not sufficient to show that the defendant made false pretenses to Mayer and that Cordove or Romero had lost the money. A specific intention to defraud is essential to the crime. (19 Cyc. 413.) No false pretenses were made to Romero, nor did he part with or lose any property in the transaction. The postoffice was the agent of Cordove, not of Romero. (Clark's Cr. Proc., Sec. 613-615; People v. Rathbun, 21 Wend. 509; State v. Hudson, 13 Mont. 112; Strang v. State, 32 Tex. Cr. 219.) There is a fatal variance between the allegations and proof in respect to ownership; it is necessary that the proof correspond with the allegations. (Jones v. State, 22 Fla. 532; State v. Miller, 153 Ind. 229;

State v. Blizzard, 70 Md. 385; Mays v. State, 28 Tex. App. 484; Headley v. State, 106 Ala. 109; State v. Myers, 82 Mo. 558; Matthews v. State, 33 Tex. 102.)

Under our statute the intention required to constitute the crime must be an intention to cheat and defraud the person from whom the property is obtained. Decisions from other states not requiring an intention to defraud a specific person are not, therefore, persuasive. The person from whom the property is obtained must be actually defrauded. (Hughes Cr. Law, Sec. 582, and cases cited.)

*W. E. Mullen,* Attorney General, for the State.

It is apparent that the defendant stole the check in question from the mail; that it was not his property and that he had no right to it; that he acted and spoke in a manner sufficient to convince the person who cashed the check that it was a legitimate transaction. So far as the pretenses are concerned it is sufficient if they induced somebody to part with money. It is perhaps immaterial who the defendant intended to defraud. He neither knew nor cared whether payment would be stopped at the bank. He knew he was not entitled to the money, and that his words and acts were false when he asked Mayer to cash the check. Our statute (Sec. 4153, R. S. 1899) contains the substance of the early English statutes defining the offense. (2 Bish. New Cr. Law, Secs. 411-414.) It would not seem necessary under Section 5307, R. S. 1899, to charge an intent to defraud any particular person, nor to prove such an intent, but an allegation and proof of an intent to defraud would seem to be alone sufficient. (12 Ency. L. 825.) It is not necessary to prove that the intent was to defraud the person named in the indictment. (State v. Bourne, 86 Minn. 432; State v. Ridge, 125 N. C. 658.) It is clear that the defendant intended to defraud the rightful owner of the check, and though the information charges an intent to defraud Mayer and Romero, such allegation may be treated as surplusage if held to be unnecessary to charge

or prove an intent to defraud a particular person. (Gustavenson v. State, 10 Wyo. 300.)

Upon the general rule four things are necessary to constitute the offense: (1) Intent to defraud. (2) An act committed. (3) A false pretense. (4) The fraud must be committed by the false pretense. (Com. v. Drew, 19 Pick. 179; Com. v. McDuffey, 126 Mass. 470; 2 Horton's Cr. Law (8th Ed.), Sec. 1130; 2 Russell on Crimes (9th Ed.) 618; Desty Am. Cr. Law 580; Haines v. Ter'y, 3 Wyo. 173.) According to the doctrine in the case of Haines v. Territory, supra, it is not necessary that the prosecutor be in fact defrauded.

The negotiation of an indorsed check, the title to which was in another, was in itself a false pretense as to the ownership of the check. (Laws 1905, Chap. 43, Sec. 65.) The defendant's acts and statements amounted to a pretense that he owned the check. He would not have secured the money had he told the truth. It is not necessary that the false pretense be the only inducement to the parting by the prosecutor with his money or property. (People v. Haynes, 14 Wend. 547; Haines v. Ter'y, supra; State v. Mills, 17 Me. 211; Com. v. Drew, supra; People v. Haynes, 11 Wend. 557; People v. Herrick, 13 Wend. 87; Smith v. State, 55 Miss. 513; In re. Snyder, 17 Kan. 542; 19 Cyc. 407.) In prosecutions for obtaining money by false pretenses evidence showing the steps preliminary to the commission of the crime is admissible when intended to show the intent. (People v. Winslow, 39 Mich. 505.) The contention that Mayer got what he bargained for, viz.: a perfectly good check which was thereafter honored at the bank upon which it was drawn is not only unsound but untrue. Mayer supposed that the defendant had a right to cash the check. In this he was deceived. If payment had been stopped at the bank Mayer would have been involved in a legal controversy, something he had not bargained for. Each case of false pretenses usually presents circumstances original in themselves, and it is necessary to

decide each case by the application of well settled principles of law—the facts of every case being, as a rule, different. The modern trend of authority apparently recognizes the increased complexity of commercial relations resulting from the more general use of checks and other commercial paper, improved facilities of communication, and a more universal use of banks by the general public and seems inclined to a doctrine better calculated to meet such contingencies as appear in this case than the older authorities which observe some very arbitrary distinctions between larceny, embezzlement, larceny as bailee, and obtaining money by false pretenses. A case very much like the one at bar where a judgment of conviction was upheld is State v. Riddell, (Wash.) 74 Pac. 477. Romero was deprived of a right by defendant's false pretenses. He was defrauded out of the exercise of his right to receive the check through the mail, and have it paid to him at the bank. It would seem not very material whether the postmaster, under the circumstances here, was the agent designated by Romero for the delivery to him of the check. (8 Ency. Pl. & Pr. 858.)

Scott, Justice.

The plaintiff in error was charged by information, tried and convicted of the crime of obtaining money under false pretenses. Having made his motion for a new trial and the court having denied the same, he brings his case here on error.

The plaintiff in error offered no evidence and on the completion of the State's testimony he moved the court to direct the jury to acquit because of the insufficiency of the evidence to support a verdict of guilty, and one of the grounds embraced in the motion for a new trial is that the verdict of the jury is contrary to the evidence. Both motions were denied and exceptions reserved and the rulings are here assigned as error.

Omitting the caption, signature and verification, the information is as follows:

"Comes now N. R. Greenfield, County and Prosecuting Attorney of the County of Carbon, in the State of Wyoming, and in the name and by the authority of the State of Wyoming, informs the court and gives the court to understand that Romon Martins, late of the county aforesaid, on the 30th day of January, A. D. 1908, at the County of Carbon and State of Wyoming, did then and there unlawfully, knowingly, designedly and falsely pretend to one Julius Mayer, with intent to cheat and defraud him, the said Julius Mayer, and one Maclovio Romero, and for the purpose of obtaining the property of said Julius Mayer, and said Maclovio Romero, to-wit: the sum of fifty dollars in lawful money, that he, the said Romon Martins, was then and there the rightful and lawful holder and owner of a certain bank check of the value of fifty dollars, which said check was of the tenor following:

"Rawlins, Wyo., January 19, 1908. No. 88.
The First National Bank of Rawlins.
Pay to the order of J. A. Cordove $50.00, Fifty Dollars.
Savory Creek Sheep Co.
By M. E. Pickett."
and endorsed on the back thereof as follows:
"J. A. Cordove."

"That the said Julius Mayer, relying upon said representations, and believing them to be true, and having no other means of ascertaining the contrary, did then and there, after the said Romon Martins endorsed said bank check with his own name, pay to the said Romon Martins, the sum of fifty dollars in lawful money for said check; that by means of the pretense aforesaid and with the intent and knowledge aforesaid the said Romon Martins did then and there obtain from the said Julius Mayer the property aforesaid, whereas in truth and in fact the said Romon Martins was not then and there the rightful or lawful owner or holder of said bank check, and had no interest in the same, all of which he then and there well knew, and well knew that said bank check was then and there the property of

said Maclovio Romero, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Wyoming."

There was no evidence offered on behalf of the defendant and at the close of the State's evidence the record recites as follows: "Counsel for defendant moves the court to direct the jury to find the defendant not guilty because of the insufficiency of the prosecution's evidence in the following particulars:

"That there was not that distinct and absolute representation of the ownership of the check either by words or conduct which is contemplated and required by law—the warranty of ownership, implied in the endorsement or the transfer of the instrument, is not such representation for the reason that warranty is a promise for the future, whereas the law requires representation as to the past or existing facts. It is not shown that a reliance on such warranty induced Julius Mayer to part with his money, and even if such inference can be drawn, it does not appear that the alleged false pretense had the effect of cheating and defrauding Mr. Mayer, or that he was in fact defrauded, for the reason that he got exactly what he bargained for— a valid and genuine individual check payable to bearer; that the evidence does not consequently show the essential element of intent on the part of the defendant to cheat and defraud, and there is no evidence offered on behalf of the prosecution to prove the alleged false pretense.

"Motion denied, to which ruling and order of the court, counsel for defendant excepts."

As already stated the overruling of this motion is assigned as error. The evidence discloses that the check was executed and delivered to J. A. Cordove in payment for wages, who endorsed it in blank, enclosed and sealed it in a letter with postage prepaid and addressed to Maclovio Romero, Rawlins, Wyoming, for the purpose of making a loan to Romero. This letter was deposited in the mail and in due course reached the postoffice at Rawlins.

The defendant having had previous knowledge of a request of Cordove for the loan called for his mail at the postoffice in Rawlins and in pursuance of the custom at that office all the Mexican mail was handed him to pick out the mail to which he was entitled or authorized to receive, and among these letters was the letter from Cordove to Romero which contained the check. The defendant took the letter, opened it, took the check therefrom and subsequently asked Mayer to cash it. Mayer examined the check and knowing the parties to the check and that it was good, then asked defendant where he got it, and defendant answered that he got it from the mail. Mayer knew the defendant was broke and had no money but said he would cash the check if the defendant would endorse it, such endorsement being solely as he stated to identify the person from whom it was received. Thereupon defendant endorsed the check and Mayer handed him fifty dollars of his employer's money, that being the amount of the check. There is no evidence showing or tending to show that defendant had any authority to cash the check or to take the letter from the postoffice or to open the letter.

It is contended by the defendant that there was no false representation, or at least not such as is contemplated by our statute. We think that the statement of how he obtained possession, accompanied by other acts of ownership, such as cashing it or asking it to be cashed, constituted, when taken together, a representation that he was the owner or entitled to cash the check as completely as though he had so stated orally. (19 Cyc. 402, and cases there cited.) Acts often speak as fully as words and to the same effect and as to whether the acts together with what was stated amounted to such a representation, or what the defendant intended by such acts and statements was a question for the jury. (Com. v. Stone, 4 Metc. (Mass.) 43; 19 Cyc. 446.) The acts, conduct and statement might reasonably have conveyed to the mind of Mayer that defendant was the owner of the check, or in other words it was the false pretense

of an existing fact and also of a past fact, viz: that he had come lawfully into its possession, and if the other material averments were also proved would be sufficient to warrant a verdict of guilty. It was not defendant's own check but that of another to which he was not a party, and the false pretense of ownership for the purpose of obtaining money thereon constituted a false pretense within the meaning of the statute. (Casily v. State, 32 Ind. 62; Clark v. State, Id. 67; Com. v. Call, 21 Pick. 515; 19 Cyc. 401.)

We perceive that there is but one other question raised by this motion which calls for our consideration, and that is as to whether the alleged false pretense had the effect of defrauding Mayer. This question may for convenience be considered in connection with another assignment of error, viz: that the verdict is contrary to the evidence, which was also one of the grounds embraced in the motion for a new trial.

The allegation in the information is that defendant by means of false pretenses obtained the money from Mayer. The section of the statute under which this prosecution was instituted is as follows: "Sec. 5143. If any person or persons shall knowingly and designedly, by false pretense or pretenses, obtain from any other person or persons any chose in action, money, goods, wares, chattels, effects, or other valuable thing whatever, with intent to cheat or defraud any such person or persons of the same, every person· so offending shall be deemed a cheat, and upon conviction, where the value of such chose in action, money, goods, wares, chattels, effects or other valuable thing shall be twenty-five dollars or more, shall be imprisoned in the penitentiary for a period not more than ten years. In cases where the value of such chose in action, money, goods, wares, chattels, effects or other valuable thing is less than twenty-five dollars, the person so offending shall be punished by a fine not to exceed one hundred dollars, or imprisonment in the county jail not more than six months. In either case under this section he shall be sentenced to

restore the property so fraudulently obtained if it can be done."

There can be no question upon the face of this statute that the property so obtained in order to constitute the offense must be obtained from the owner by means of false pretenses. There can be no party defrauded within the purview of this statute except the owner or one having a special ownership in and who is induced by false pretenses to part with his property. The fraud contemplated is the fraud which is perpetrated against the owner of the property. In this respect our statute is different from that of some states where intent alone is sufficient regardless of whether it be to defraud any specific person (19 Cyc. 415), or when the attempt to obtain goods by false pretenses is made a distinct felony. Having no statute making it a crime to attempt to obtain goods by false pretenses decisions under such a statute are inapplicable to the case before us. Under the statute the intent to defraud the person from whom the property is obtained by means of false pretenses is an essential element of the crime. In the absence of such intent the crime is not complete, and even if such intent be present the crime is still not complete unless the party from whom the goods were so obtained was actually defrauded. (19 Cyc. 411, and cases there cited.) Naked possession by an agent of his principal's property does not vest title of ownership in such agent. It is said, Sub-Division D, at page 408 of 19 Cyc.: "To constitute an obtaining of property defendant must in the first place acquire at least a voidable title to the property; that is the owner must intend to invest him with the title as distinguished from the mere custody or possession of the goods." This text is fully supported by citations in the foot notes. Under a similar statute the supreme court of Wisconsin said: "The crime is defined in Sec. 4423, R. S., and consists in obtaining the money or property of another by false pretenses. It must be obtained from the owner by false pretenses." (Owens v. State, 83 Wis. 496; Sec. 472,

2 Bishop's New Criminal Law.) The crime is statutory, and the information should set forth all the requisites of the statute to constitute it. The ownership should by the averments of the information be correctly stated. (Bishop's New Criminal Proc., Sec. 173; Wharton's Criminal Law (8th Ed.), Secs. 1211, 1223, 932, 977; Wharton's Criminal Ev., Sec. 94; 19 Cyc. 425, 426, 434, and cases cited; Leobold v. State, 33 Ind. 484; Halley v. State, 43 Id. 509; State v. Miller, 153 Id. 229; State v. Lathrop, 15 Vt. 279; Washington v. State, 41 Tex. 583.)

In the case before us the information charges that the money was obtained from Julius Mayer and while the ownership is not laid in any one else, nor is it directly laid in Mayer for that matter, yet the inference is that it was his money. Without discussing the sufficiency of the information in this respect, as that question has not been here presented, but conceding for the purpose of this case alone that it is sufficient, we pass to a consideration of the evidence to see if it be sufficient to support a verdict and whether or not the verdict is contrary to the evidence.

From the evidence it appears that the money obtained from Mayer was not his money but was the money of one Robert Freedman, by whom Mayer was employed, and that Mayer had authority to receive and cash checks as agent for his employer. It is not alleged in the information how or in what capacity Mayer held the money, or the relation, if any, he sustained to Freedman, nor is it alleged that the money so obtained was Freedman's money. (Owens v. State, supra; Jacobs v. State, 31 Neb. 33; People v. Krummer, 4 Park Cr. Rep. 217.) The defendant was not charged with obtaining Freedman's money by false pretenses, but with obtaining money from Mayer by false pretenses. In view of the uniform holdings under a statute similar to ours that ownership is a material averment and must be proved as laid it is difficult to understand how A can be convicted upon an information which

charges the obtaining of money under false pretenses from B upon proof of ownership of the money in C. The issue tendered, if any, was that Mayer was the owner of the money. The proof was that Freedman was the owner. It is not alleged in the information that Mayer was the agent of Freedman and that pursuant to authority of his principal he acted upon the false representations and for that reason his agency or right to pay out money other than his own was not in issue. Proof of ownership in Freedman of the money obtained which was offered and submitted by the state was inconsistent upon the face of the information with ownership in Mayer as therein alleged, and in the absence of allegations showing ownership in Freedman and the agency and authority of Mayer to cash the check with Freedman's money must be considered and treated as proof of a separate and distinct crime. Such evidence disproved defendant's guilt of the crime as charged. No false pretenses other than those to Mayer are alleged or proven. He was not defrauded for the money obtained did not belong to him, and upon the evidence in this case, if any one was defrauded it was Cordove or Romero, and no false representations were made to either of them. The crime, if any was proven, was not the crime charged. It is not necessary to discuss the question as to whether proof alone of possession by Mayer of the money which defendant obtained would be *prima facie* sufficient to support the verdict if ownership were directly laid in Mayer. Upon the evidence the latter had nothing more than the mere naked possession (Owens v. The State, *supra*) and it is sufficient to say that the proof is not limited to his possession alone, but upon the record it is undisputed that Freedman was the owner for whom Mayer was acting. There was more than a variance in the proof; there was a failure to prove the crime, if any, as charged, although proof was submitted tending to prove a separate and distinct crime and with the commission of which the defendant was not charged. The verdict is contrary to the evidence.

The judgment will be reversed and the cause remanded for a new trial or such further proceedings as may be deemed proper not inconsistent with this opinion.

*Reversed.*

POTTER, C. J., and BEARD, J., concur.