2011 WY 104

**Christina Carole MAYCOCK,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. S–10–0208.

Supreme Court of Wyoming.

July 6, 2011.

———

Representing Appellant: Kevin K. Kessner of Yonkee & Toner LLP, Sheridan, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Justin A. Daraie, Assistant Attorney General. Argument by Mr. Daraie.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1]  Appellant Christina Carole Maycock challenges her conviction for obtaining property by false pretenses, raising claims of sufficiency of the evidence and evidentiary error. We hold the evidence presented at trial is insufficient to sustain Maycock's conviction and reverse.

## ISSUES

[¶ 2]  Maycock presents the following issues:

I.  Did the State fail to prove beyond a reasonable doubt that the Cemetery District had been defrauded of insurance premiums when the unrebutted testimony of the District's board members was that the Board was willing to pay the insurance premiums for the families of unmarried couples with children?

II.  Did the trial court violate the best evidence rule when it allowed testimony about the contents of an insurance policy without requiring that the policy be entered into evidence?

## FACTS

[¶ 3] Maycock began working as a part-time employee for the Campbell County Cemetery District (District) in 1984. She became a full-time grounds supervisor in the fall of 1985, and, in 1988, she was promoted to general cemetery supervisor. Maycock held that position until 2008, at which time she retired and was elected to the District's Board of Directors (Board).

[¶ 4] In 1985, the Board decided it would finance health insurance coverage for the District's full-time employees and their families. The Board arranged its first group policy with Time Insurance Company. The Board continued to provide such insurance, but switched insurance companies multiple times over the ensuing years. In 1992, the District signed on with Employer's Health Insurance Company, which later became Humana Insurance Company. The terms of that 1992 policy limited coverage to the District's employees, their spouses, and their dependent children.

[¶ 5] On December 4, 1992, Maycock enrolled in the District's insurance plan with Employer's Health. On the insurance enrollment form, Maycock noted she was married and listed Bill Maycock as her spouse. As a result, Bill Maycock was added to the District's group plan, with the District paying the full cost of his insurance coverage.

[¶ 6] In August 2009, more than sixteen years later, the Gillette Police Department received a tip that Maycock had misrepresented Bill Maycock to be her spouse on the 1992 insurance enrollment form. The ensuing investigation confirmed the Maycocks were not husband and wife in 1992, at the time Maycock enrolled in the District's group insurance plan. The Maycocks had previously been married, but were divorced in 1971.

Despite the divorce, the Maycocks and their children continued to live together as a family in a home jointly owned by the couple. They eventually remarried on September 1, 1999.

[¶ 7] On September 22, 2009, the State charged Maycock with one count of obtaining property by false pretenses under Wyo. Stat. Ann. § 6–3–407(a)(i) (LexisNexis 2003)[1] and § 6–3–410 (LexisNexis 2009),[2] alleging that Maycock "on or between December 4, 1992 and September 1, 1999, ... did knowingly obtain property from another person by false pretenses with intent to defraud the person, with the value of the property being [five hundred] dollars [ ($500.00) ] or more, that conduct occurring as part of a common scheme or plan and over the course of time[.]" After a two-day trial, a jury convicted Maycock on the charged offense on May 27, 2010. The district court imposed a suspended prison sentence of two to five years, placed Maycock on five years of supervised probation, and ordered her to pay, among other things, restitution in the amount of $17,288.00.[3] This appeal followed.

## DISCUSSION

[¶ 8] In her first issue, Maycock challenges the legal sufficiency of the evidence supporting her conviction. Our standard for reviewing sufficiency of the evidence claims is well known, and we need not repeat it in detail here. In short, our task in considering a sufficiency of the evidence claim is to determine whether the evidence as a whole is adequate to support a reasonable inference of guilt beyond a reasonable doubt when that evidence is viewed in the light most favorable to the State. *Trevino v. State*, 2006 WY 113, ¶ 9, 142 P.3d 214, 217 (Wyo.2006); *Lopez v.*

---

1. At the time of the offense, § 6–3–407(a)(i) provided in relevant part:
   (a) A person who knowingly obtains property from another person by false pretenses with intent to defraud the person is guilty of:
   (i) A felony ... if the value of the property is five hundred dollars ($500.00) or more[.]
   The statute was amended in 2004 to increase the felony level amount to $1,000.00. 2004 Wyo. Sess. Laws. Ch. 126, § 1.

2. § 6–3–410 provides:

The amount of property involved in violations of W.S. 6–3–402 through 6–3–404 and 6–3–406 through 6–3–408 committed pursuant to a common scheme or the same transaction, whether the property is taken from the same person or different persons, may be aggregated in determining the value of the property.

3. This is the amount of the insurance premiums paid by the Board on behalf of Bill Maycock during the time period at issue.

*State,* 2004 WY 28, ¶ 16, 86 P.3d 851, 857 (Wyo.2004).

██ [¶ 9] In order to convict a defendant of obtaining property by false pretenses under § 6–3–407(a), the State must prove the following elements beyond a reasonable doubt:

   (1) the pretenses;

   (2) their falsity;

   (3) the fact of obtaining property [4] by reason of the pretenses;

   (4) the knowledge of the accused of their falsity; and

   (5) the intent to defraud.

*Lopez v. State,* 788 P.2d 1150, 1152 (Wyo. 1990) (citing *Miller v. State,* 732 P.2d 1054 (Wyo.1987); *Driver v. State,* 589 P.2d 391 (Wyo.1979)). Indispensable to the establishment of this crime is proof that the victim relied on the alleged false pretense; that is, proof the alleged false pretense was the controlling factor which induced the victim to part with his property. *Miller,* 732 P.2d at 1062–63; *see also* 3 Wayne R. LaFave, *Substantive Criminal Law* § 19.7(c) at 122–23 (2nd ed. 2003).

[¶ 10] In this case, there is no question that sufficient proof was adduced at trial to permit a reasonable juror to find beyond a reasonable doubt that Maycock acted to deceive by falsely representing her marital status on the insurance enrollment form. The question presented for our consideration is whether there is sufficient proof of the same nature of reliance by the Board on that misrepresentation. After careful review of the record, we conclude there is not.

[¶ 11] The only evidence adduced at trial on this issue came from the testimony of three defense witnesses who were Board members during the time period the crime allegedly occurred. Viewed collectively, their testimony shows: (1) the Board intended to finance insurance for the District's employees and their families; (2) the Board broadly defined "family" to include anyone living in the same household as the employee; (3) the Maycocks' marital status was of no consequence to the Board because Bill Maycock fit within the Board's broad definition of family for purposes of the District's insurance coverage; and (4) the Board would have insured Bill Maycock even if it had known the Maycocks were not legally married.[5] No witness testified that the Board relied on Maycock's misrepresentation or that the Board would not have paid the insurance premiums for Bill Maycock but for that misrepresentation. In sum, there is simply no evidence that Maycock's misrepresentation was the determining factor in the Board's decision to pay the cost of insuring Bill Maycock. Absent proof that Maycock obtained the cost of insurance coverage for Bill Maycock by her misrepresentation, her conviction cannot stand and must be reversed. Our determination on this issue renders it unnecessary to address Maycock's other claimed error.

### CONCLUSION

[¶ 12] We hold there is insufficient evidence to sustain Maycock's conviction for the crime of obtaining property by false pretenses. The matter is remanded to the district court with directions that the judgment and sentence be vacated and that the amended information be dismissed with prejudice.

---

4. Property is defined as "anything of value whether tangible or intangible, real or personal, public or private." Wyo. Stat. Ann. § 6–1–104(a)(viii) (LexisNexis 2009).

5. It is apparent from the testimony that these former Board members were not aware of the coverage limitations under the Humana policy. Because there is no evidence to the contrary, we must assume the other Board members shared the same misunderstanding.