# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 7

OCTOBER TERM, A.D. 2016

*January 25, 2017*

RICHARD CARL BOHLING,

**Appellant**
**(Defendant),**

v.                                                                              S-16-0144

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Albany County*
*The Honorable John R. Perry, Judge*

*Representing Appellant:*
> Tim Newcomb, Attorney at Law, Laramie, Wyoming; Linda Devine, Devine Law Office, Laramie, Wyoming.  Argument by Ms. Devine.

*Representing Appellee:*
> Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General. Argument by Ms. Martens.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    Appellant Richard Bohling was convicted of four felony counts of obtaining property by false pretenses and one misdemeanor count of official misconduct.   On appeal, he claims that in order to have been convicted of obtaining property by false pretenses, the State was required to prove that title to the property in question passed from Albany County to him. He contends that the State failed to prove that it did.

[¶2]    We have examined Wyo. Stat. Ann. § 6-3-407 (LexisNexis 2015), which establishes the crime of obtaining property by false pretenses.  Our interpretation of this statute leads to the unremarkable conclusion that the charge of obtaining property by false pretenses requires that the victim consensually part with both title and possession in reliance on the defendant's false representations.  We have also carefully reviewed the record and can only conclude that there was insufficient evidence to prove beyond a reasonable doubt that Bohling committed the crime of obtaining property by false pretenses.  Consequently, we must reverse those four felony convictions.

[¶3]    We decline to consider Bohling's claim regarding the misdemeanor conviction of official misconduct, due to his failure to provide cogent argument on this issue.  As a result, the misdemeanor conviction is affirmed.

## ISSUES

[¶4]    We consider the following two questions to be dispositive of this appeal:

1.    Does the crime of obtaining property by false pretenses under Wyo. Stat. Ann. § 6-3-407 require that the victim part with both title and possession?

2.    Was the evidence presented sufficient for a reasonable jury to find beyond a reasonable doubt that Bohling committed the crime of obtaining property by false pretenses?

## FACTS

[¶5]    Bohling was the Albany County and Prosecuting Attorney from 2003 through 2014.   His responsibilities included managing his office's budget and overseeing the purchases of items it required.  It is Bohling's purchases of certain cameras and electronic equipment with county funds between 2008 and 2012 that are at the heart of this matter.

[¶6]    When items were purchased for the office with county funds, a voucher was submitted to the Albany County Commissioners for approval.  A voucher is formatted like a cover sheet, with the name of the creditor that the county needs to pay, and it is submitted to the county commissioners with the relevant receipts attached.  The voucher

1

includes an affidavit from an elected official or department head, like Bohling, who must sign to certify that the charge to be paid is correct. After review and approval of the expenditure, a county commissioner will sign off on the voucher. The county treasurer will then pay the charge. This same process is followed in Albany County regardless of whether the expense is a charge directly with a vendor, or if it is a purchase made on a county credit card issued to the elected official.

[¶7] Concerns over some of Bohling's purchases with county funds began in 2012, when the office manager of the county attorney's office brought certain purchases involving camera equipment to the attention of Albany County Commissioner Tim Sullivan, who was chairman of the Commission at the time. After reviewing the purchases with Albany County Clerk Jackie Gonzales, Commissioner Sullivan decided not to refer the matter to law enforcement.

[¶8] About two years later, in 2014, another employee in Bohling's office raised a similar concern about his purchases of cameras and electronic equipment with county funds. Commissioner Sullivan worked with Albany County Sheriff David O'Malley and County Clerk Gonzales to look into those purchases. They contacted the Wyoming Division of Criminal Investigation (DCI). DCI agents investigated and concluded that Bohling had used a number of cameras and some electronic equipment purchased with county funds as his own personal property.

[¶9] Based upon the evidence gathered by DCI, the State[1] filed an information consisting of nine counts against Bohling. Counts I through IV of the information charged him with felony larceny by bailee under Wyo. Stat. Ann. § 6-3-402(b).[2] These counts were based on Bohling's alleged conversion of the cameras and electronics to his own use. Count V charged a felony for wrongfully taking or disposing of property in violation of Wyo. Stat. Ann. § 6-3-403(a). Count VI also charged a felony for submitting false vouchers in violation of Wyo. Stat. Ann. § 6-5-303(b). Counts VII through IX were misdemeanor charges pursuant to Wyo. Stat. Ann. § 6-5-107(a)(i), § 6-5-110 and § 9-13-105, respectively.

[¶10] A few months later, the State amended the information. It decided to change Counts I through IV from larceny by bailee to obtaining property by false pretenses in

---

[1] Because Bohling was the Albany County and Prosecuting Attorney, the Wyoming Attorney General's Office stepped in to prosecute the case against him. Bohling filed a petition for writ of review claiming that the Attorney General needed to provide evidence of its lawful authority to prosecute him. We denied his petition. *See Bohling v. State*, No. S-15-0245 (October 20, 2015), *available at* https://efiling.courts.state.wy.us/public/caseView.do?csIID=18458.
[2] Subsequently, Wyo. Stat. Ann. § 6-3-402 was amended in 2013 to combine larceny and larceny by bailee into subsection (a). *See* 2013 Wyo. Sess. Laws ch. 191, §§ 2,3. As a result, subsection (b) is now repealed. *Id.* Wyo. Stat. Ann. § 6-3-407 remained unchanged.

violation of Wyo. Stat. Ann. § 6-3-407(a) and (a)(i).[3] These first four felony counts charged that Bohling knowingly obtained property valued over $1,000.00 from Albany County by false pretenses with the intent to defraud it. Count V remained a felony wrongful taking or disposing of property charge pursuant to § 6-3-403(a). Count VI also remained the same, charging a felony for submitting false vouchers in violation of Wyo. Stat. Ann. § 6-5-303(b). Counts VII through IX, the misdemeanor charges, remained substantively the same. The district court dismissed Count IX, misuse of office, on the State's motion.

[¶11] Bohling moved for a bill of particulars. The State acceded to the request and provided a bill which indicated, *inter alia*, that in regards to Counts I through IV, Bohling had submitted vouchers to the Board of Albany County Commissioners for the purchase of certain cameras and other electronics for his own personal use, thereby using falsehood to induce the county to pay for the items.[4]

[¶12] The case proceeded to trial in due course. At the close of the State's case-in-chief, Bohling moved pursuant to W.R.Cr.P. 29 for a judgment of acquittal on the four felony counts of obtaining property by false pretenses and the felony count of submitting false vouchers. With regards to the four felony false pretenses counts, he argued that title to the property in question had to pass from the county to him, and that the evidence did not establish that it did. The State countered by arguing that passage of title was not required to sustain a charge of obtaining property by false pretenses, and that even if it was, the State had provided sufficient evidence of it.

[¶13] After considering the parties' positions, the district court denied Bohling's motion. Bohling then presented his case. The jury convicted him of Counts I through IV, the four felony counts of obtaining property by false pretenses, and Count VII, the misdemeanor charge of official misconduct. He was acquitted of the charges in Counts V, VI and VIII.

[¶14] Bohling renewed his motion for judgment of acquittal after the verdict was returned. He argued essentially the same grounds as he had earlier, and the State responded with the same arguments it had made before. The district court denied Bohling's renewed motion.

[¶15] Bohling was sentenced to two to four years of incarceration and fined $10,000 for each felony count of obtaining property by false pretenses. The sentences were to run

---

[3] A range of dates were added in Counts I through III. Date ranges in Counts IV through VIII were also adjusted.
[4] As briefly mentioned above, *see* ¶6, and as discussed in greater detail in ¶40, the items were either purchased on a county charge account opened with a vendor or on the county credit card issued to Bohling in his official capacity. In other words, Bohling never used his own money to buy these items and thus never sought personal reimbursement from the county.

concurrently.  On the misdemeanor conviction, he was fined $5,000.  Bohling then timely perfected this appeal.

[¶16]  Additional pertinent facts will be set forth below in our discussion of the second issue concerning the sufficiency of the evidence.

## DISCUSSION

### *Elements of Obtaining Property by False Pretenses*

[¶17]  The first step in resolving this matter is to determine whether the crime of obtaining property by false pretenses under Wyo. Stat. Ann. § 6-3-407 requires that the victim not only gives possession to the defendant, but passes title as well.  The parties' positions on this issue are polar opposites.  Bohling asserts that title must be transferred, while the State clings to the contention that it is not necessary for title to pass in order to convict of the charge.

[¶18]  Statutory interpretation is a question of law requiring *de novo* review.  *Adekale v. State*, 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015).  Criminal statutes are to be strictly construed, meaning that they are not to be enlarged by implication or extended by inference or construction.  *Mraz v. State*, 2016 WY 85, ¶ 71, 378 P.3d 280, 296 (Wyo. 2016).  A statute is clear and unambiguous if the words are such that reasonable minds are able to agree on its meaning in a consistent and predictable fashion.  *Mendoza v. State*, 2016 WY 31, ¶ 9, 368 P.3d 886, 891 (Wyo. 2016).  Ambiguity arises if the statute is vague or uncertain and subject to varying interpretations.  *Id.*  Divergent opinions among parties as to the meaning of a statute may be evidence of ambiguity, but the fact that opinions may differ as to a statute's meaning is not conclusive of ambiguity.  *Campbell Cty. Sch. Dist. v. Catchpole*, 6 P.3d 1275, 1285 (Wyo. 2000).  If we determine that the language of a statute is ambiguous, only then will we proceed to the next step; that is, the application of general principles of statutory construction to the language of the statute in order to construe any ambiguous language to accurately reflect the intent of the legislature.  *Powder River Basin Res. Council v. Wyoming Oil & Gas Conservation Comm'n*, 2014 WY 37, ¶ 19, 320 P.3d 222, 229 (Wyo. 2014).

[¶19]  Title 6 of Wyoming's statutes establishes the Wyoming Criminal Code.[5]  Our analysis must begin by examining the statute creating the offense of obtaining property by false pretenses.  It states:

---

[5] The statutes provide that "[c]ommon-law crimes are abolished.  No conduct constitutes a crime unless it is described as a crime in this act or another statute of this state."  Wyo. Stat. Ann. § 6-1-102 (LexisNexis 2015).

**§ 6-3-407. Obtaining property by false pretenses; penalties.**

(a) A person who knowingly *obtains* property from another person by false pretenses with intent to defraud the person is guilty of:

(i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is one thousand dollars ($1,000.00) or more; or

(ii) Repealed by Laws 1984, ch. 44, § 3.

(iii) A misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both, if the value of the property is less than one thousand dollars ($1,000.00).

Wyo. Stat. Ann. § 6-3-407 (emphasis added).

[¶20] The word in the statute that is critical to our conclusion in this case is "obtains." While it seems to be straightforward at first glance, the term has created consternation in the context of this crime, and we find it ambiguous. As one authoritative secondary source confirms: "The wording of the typical false pretenses statute—requiring that the defendant 'obtain' property by false pretenses—is quite ambiguous on the issue of whether he must obtain title to, or possession of, the property, or whether he must obtain both title and possession." 3 Wayne R. LaFave, *Subst. Crim. L.* § 19.7(d) (2d ed., Oct. 2016 update). Fortunately, there is a great deal of precedent and persuasive authority for us to consult in construing the language to accurately determine our legislature's intent.

[¶21] To understand the elements of the crime of obtaining property by false pretenses under § 6-3-407, it is helpful to consider the crime's genesis. It was created by the British Parliament in 1757 to plug a loophole left by the crime of larceny. *See Adekale*, ¶ 28, 344 P.3d at 768; *see also People v. Williams*, 305 P.3d 1241, 1246 (Cal. 2013); *State v. Sabins*, 127 N.W.2d 107, 108 (Iowa 1964). Back then, while a person who obtained possession but not title to another's property by false representations was guilty of larceny,[6] one who obtained title to the property was not guilty of larceny, and there was no crime to fill the void. *See* 3 LaFave, *supra*, § 19.7(a). Parliament stepped in and adopted a statute which punished one who knowingly and designedly by "false pretence or pretences, shall *obtain* from any person or persons, money, goods, wares or

---

[6] Historically called larceny by trick. *See* 3 LaFave, *supra,* § 19.7(a).

merchandises, with intent to cheat or defraud any person or persons of the same." *Id.* (emphasis added).

[¶22] This newly enacted crime was considered a statutory offense separate and distinct from the common law crime of larceny. *See Williams*, 305 P.3d at 1246. A principal difference between the offenses was that the crime of obtaining property by false pretenses involved acquiring title to the property, and not just possession. *Id.*; 3 LaFave, *supra*, § 19.7(d); 3 Charles E. Torcia, *Wharton's Criminal Law* § 428 (15th ed., Sept. 2016 update). Both crimes eventually made their way into the early criminal laws of the American states, and the distinction has existed ever since.

[¶23] In 1876, the Wyoming Territory codified the crime of obtaining property by false pretenses:

### Obtaining Goods Under False Pretenses

> Sec. 139. If any person or persons shall knowingly and designedly, by any false pretense or pretenses, *obtain* from any other person or persons, any chose in action, money, goods, wares, chattels, effects, or other valuable thing whatever, with intent to cheat or defraud any such person or persons of the same; every person so offending shall be deemed a cheat, and, upon conviction, shall be fined in any sum not exceeding one thousand dollars, and imprisoned in the penitentiary not exceeding one year, and shall be sentenced to restore the property, so fraudulently obtained, if it can be done.

Wyo. Comp. Stat. Chap. XXXV, § 139 (J. R. Whitehead 1876) (emphasis added). The territorial Supreme Court had occasion to scrutinize the statute and made clear that "[t]he distinction between larceny and false pretenses is well settled, and consists in the fact whether or not the owner intended or consented to part with the title to property." *Haines v. Territory*, 3 Wyo. 167, 175, 13 P. 8, 13 (Wyo. Terr. 1887).

[¶24] The crime continued to have a place in Wyoming's statutes after statehood, and its substance, including the use of the word "obtain," remained unchanged. *See* Wyo. Comp. Stat. Ch. 9, § 5143 (Van Orsdel & Chatteron 1899).[7] In 1908, we took another

---

[7] The crime of obtaining property by false pretenses as set forth in Wyoming's 1899 statutes is as follows:

### OBTAINING GOODS BY FALSE PRETENSES.

> Sec. 5143. If any person or persons shall knowingly and designedly, by false pretense or pretenses, *obtain* from any other person, or persons any

look at the crime in *Martins v. State*, 17 Wyo. 319, 98 P. 709 (1908). Our interpretation was again that the statute required the accused to obtain title to the property from the owner. *Id.* at 330, 98 P. at 712. We cited an authoritative source that put the requirement plainly: "To constitute an obtaining of property, defendant must in the first place acquire at least a voidable title to the property; that is, the owner must intend to invest him with the title, as distinguished from the mere custody or possession of the goods." *Id.* Based upon this interpretation, we concluded that the facts of that case did not fit the charge of false pretenses as set out in the information because the one parting with the money was not the actual owner of it, and thus he could not pass title. *Id.*

[¶25] Over the next hundred-plus years, Wyoming's false pretenses statute did not change in substance, and it has always included the word "obtain." *See* Wyo. Stat. Ann. § 6-3-407 (LexisNexis 2013); Wyo. Stat. Ann. § 6-3-407 (LexisNexis 2009); Wyo. Stat. Ann. § 6-3-407 (LexisNexis 2005); Wyo. Stat. Ann. § 6-3-407 (LexisNexis 2001); Wyo. Stat. Ann. § 6-3-407 (Michie 1997); Wyo. Stat. Ann. § 6-3-407 (Michie 1988); Wyo. Stat. Ann. § 6-38 (Michie 1957); Wyo. Comp. Stat. Ann. § 9-907 (1945); Wyo. Comp. Stat. Ann. § 32-908 (Courtright 1931); Wyo. Comp. Stat. Ann. § 7305 (Swainson 1920); Wyo. Comp. Stat. Ch. 9, § 5143 (Van Orsdel & Chatteron 1899); Wyo. Comp. Stat. Ch. XXXV, § 139 (J.R. Whitehead 1876). Indeed, we previously noted that the different iterations of the statute define the identical offense of obtaining property by false pretenses and the elements have remained the same. *See Lopez v. State*, 788 P.2d 1150, 1152 n.2 (Wyo. 1990).

[¶26] Throughout the decades, we have had quite a few occasions to revisit the statute defining the crime of obtaining property by false pretenses and its distinction from other offenses—larceny in particular. *See, e.g., Sweets v. State*, 2013 WY 98, ¶ 15, 307 P.3d 860, 866 (Wyo. 2013); *Nguyen v. State*, 2013 WY 50, ¶ 14, 299 P.3d 683, 687 (Wyo. 2013); *Powell v. State*, 2012 WY 106, ¶ 6, 282 P.3d 163, 164 (Wyo. 2012); *Maycock v. State,* 2011 WY 104, ¶ 9, 257 P.3d 20, 22 (Wyo. 2011); *Perritt v. State*, 2005 WY 121, ¶ 10, 120 P.3d 181, 186-87 (Wyo. 2005); *Lopez*, 788 P.2d at 1152; *Miller v. State*, 732 P.2d 1054, 1062 (Wyo. 1987); *Driver v. State*, 589 P.2d 391, 393 (Wyo. 1979); *Anderson v. State*, 27 Wyo. 345, 352-53, 196 P. 1047, 1048 (1921). In none of our opinions concerning this crime have we ever said that the term "obtain" means that the wrongdoer only needs to acquire possession and not title; we have always said the contrary. A ruling

---

chose in action, money, goods, wares, chattels, effects, or other valuable thing whatever, with intent to cheat or defraud any such person or persons of the same, every person so offending shall be deemed a cheat, and upon conviction, where the value of such chose in action, money, goods, wares, chattels, effects or other valuable thing shall be twenty-five dollars-or more, shall be imprisoned in the penitentiary for a period not more than ten years.

Wyo. Comp. Stat. Ch. 9, § 5143 (Van Orsdel & Chatteron 1899) (emphasis added).

that only possession must be obtained would destroy the distinction from larceny: if the owner of the goods intends to keep title but part with possession, the crime is larceny, but if the owner intends to part with both title and possession, the crime is false pretenses. To this day, the distinction is preserved by the structure of our criminal code, which defines larceny in § 6-3-402 and obtaining goods by false pretenses in a separate section, § 6-3-407.

[¶27] In *Miller*, we explained that to establish the crime of obtaining property by false pretenses, it is necessary that the victim pass title to his property to the accused. 732 P.2d at 1063. Similarly, in *Perritt*, our analysis focused on the requirements of § 6-3-407, and in doing so we quoted *Martins,* where we explained: "To constitute an obtaining of property, defendant must in the first place acquire at least a voidable title to the property; that is, the owner must intend to invest him with the title, as distinguished from the mere custody or possession of the goods." *Perritt*, ¶ 16, 120 P.3d at 188. Our opinion in *Perritt* correctly surmised:

> The crime of false pretenses has deep roots in Anglo-American law. That crime is defined in slightly different ways in the various jurisdictions but as a general rule has five elements: (1) a false representation of a material present or past fact (2) which causes the victim (3) to pass title to (4) his property to the wrongdoer, (5) who (a) knows his representation to be false and (b) intends to defraud the victim.

*Id.* ¶ 15, 120 P.3d at 188 (citing 3 LaFave, *supra*, § 19.7). More recently, in *Powell v. State*, we again examined the difference between larceny and false pretenses and explained the key to the latter "is that, having been deceived by the thief, the victim consensually parts with both possession and title." 2012 WY 106, ¶ 10, 282 P.3d at 166.

[¶28] Additional precedent this Court unearthed is consistent with our other cases and confirms our conclusion today. Unfortunately, neither party cited the following two cases, which we believe to be important. In *Neel v. State*, this Court explained:

> [W]e affirmed the conviction of defendants on a charge of grand larceny. They have petitioned for rehearing, asserting they were not proved guilty of a theft; that if they were to be charged with any crime, it should have been the crime of obtaining property under false pretenses; and that the evidence necessary to prove the charge of obtaining property under false pretenses is different from the evidence required to prove the charge of theft.

8

It is well settled that where a person by trick or fraud obtains possession of property intending at the time of obtaining the property to convert it to his own use, and does so convert it, the fraud is the equivalent of a felonious taking and the offense is larceny. In the instant case the jury was expressly instructed to this effect.

Our grand larceny statute, § 6-132, W.S. 1957, appears to have been taken from the laws of Indiana, and that state has repeatedly held possession of property obtained by fraud with the intent to steal the same constitutes larceny when there is a felonious appropriation.

In "larceny" owner of the property has no intention to part with title therein to the person taking it although he may intend to part with possession, while in "false pretenses" owner intends to part with both his possession and title but such are obtained from him by fraud.

If only the possession of the thing of value is obtained and it is then converted by the accused, the crime involved is larceny and not false pretense. Otherwise stated, one test for distinguishing between larceny and obtaining property by false pretenses is to determine whether the offender could confer good title upon another by sale and delivery of the property. If he could not, the offense is larceny.

454 P.2d 241, 242-43 (Wyo. 1969) (citations and emphasis omitted). Subsequently, in *Otte v. State* we reaffirmed that

[i]n denying a petition for rehearing in *Neel v. State*, we said:

It is well settled that where a person by trick or fraud obtains possession of property intending at the time of obtaining the property to convert it to his own use, and does so convert it, the fraud is the equivalent of a felonious taking and the offense is larceny.

\* \* \*

Fraud vitiates the consent of the victim if the other elements of the crime are present. *State v. Jesser*, 95 Idaho 43, 501 P.2d 727, 735. It was said in *Jesser*, quoting from a

9

"landmark" Massachusetts decision (*Commonwealth v. Barry*, 124 Mass. 325, 327 (1878):

> If the possession is fraudulently obtained, with intent on the part of the person obtaining it, at the time he receives it, to convert the same to his own use, and the person parting with it intends to part with his possession merely, and not with his title to the property, the offence is larceny.

> We agree with the rule expressed by the court in *Commonwealth v. Barry* and consider it applicable to the fact-situation in the case at hand. We have said essentially the same thing in *Neel v. State*, *supra*, where we said:

> In "larceny" owner of the property has no intention to part with title therein to the person taking it although he may intend to part with possession, . . . .

563 P.2d 1361, 1364 (Wyo. 1977) (citations and emphasis omitted).

[¶29] Our case law is clear that the word "obtain" in the statute defining the crime of false pretenses has always been interpreted to mean that the wrongdoer must obtain both title to and possession of the victim's property.[8]  If only possession passes, the crime is larceny if all the elements can be proven under Wyo. Stat. Ann. § 6-3-402.

---

[8] Two points merit mentioning about title as it applies in the false pretenses context.  First, title is synonymous with ownership. *Martins*, 17 Wyo. at 330, 98 P. at 712; *Williams*, 305 P.3d at 1248-49; *Reid v. Com.*, 781 S.E.2d 373, 375 (Va. App. 2016).  Thus, title in this context does not always mean formal title, such as to a vehicle, rather the simple concept of ownership equates to title.  *See id.; see also People v. Long*, 294 N.W.2d 197 (Mich. 1980) (explaining that the defendant, by distracting cashiers and asking for various amounts of change received ten dollars more than he had given, was guilty of false pretenses rather than larceny, because the cashier intended to transfer both possession and title).  Second, the type of title that is obtained by the accused through his use of false pretenses is at most voidable title. *Shropshire v. Com.*, 577 S.E.2d 521, 523-28 (Va. App. 2003); *In re Newpower*, 233 F.3d 922, 929 (6th Cir. 2000); *State v. Mermis*, 20 P.3d 1044, 1049 (Wash. App. 2001); 3 Wharton's Criminal Law § 428; 35 C.J.S. *False Pretenses* § 27.  The requirement for a false pretenses claim that title be obtained does not mean absolute title because such a requirement would make it impossible for the crime to be consummated.  *Martins*, 17 Wyo. at 330, 98 P. at 712; *Whitmore v. State*, 298 N.W. 194, 195 (Wis. 1941); *Chappell v. State*, 25 N.E.2d 999, 1001 (Ind. 1940). When, because of his fraud, the accused obtains voidable title to property, he may sell them to a good-faith purchaser for value; he just does not have superior title to that of the true owner. Wyo. Stat. Ann. § 34.1-2-403 (LexisNexis 2015) ("A person with voidable title has power to transfer a good title to a good faith purchaser for value."); *cf. Kenyon v. Abel*, 2001 WY 135, ¶ 13, 36 P.3d 1161, 1166 (Wyo. 2001); *Roberson v. Manning*, 268 P.3d 1090, 1095 (Alaska 2012); *West v. Roberts*, 143 P.3d 1037, 1043-44 (Colo. 2006).

[¶30]  Secondary sources also support this unavoidable conclusion.  LaFave states that "the crime of false pretenses requires that the defendant, by his lies, obtain title to the victim's property.  If he obtains *possession* without title by means of his lies, his crime is larceny."  3 LaFave, *supra*, § 19.7(d).  Similarly, Wharton's explains:

> Over the years, the pertinent statutes and decisions relating to the crime of false pretenses have commonly spoke in terms of the defendant "obtaining" property or causing the victim to "part with" or "surrender" his property. Despite this generality of language, it has traditionally been required, for the crime to be committed, that the defendant obtain possession of and title to the victim's property.

3 Wharton's Criminal Law § 428; *see* 35 C.J.S. *False Pretenses* §§ 2, 27; *see also* 32 Am.Jur.2d *False Pretenses* § 3; Wyo. Criminal Pattern Jury Instructions 34.07, Use Note (2014).

[¶31]  Consistent with our long-standing precedent, we again conclude the elements for the crime of obtaining property by false pretenses pursuant to Wyo. Stat. Ann. § 6-3-407 consist of (1) the pretenses; (2) their falsity; (3) the fact of obtaining property by reason of the pretenses; (4) the knowledge of the accused of their falsity; and (5) the intent to defraud.  The third element, that the accused obtains property, means that the accused must obtain both title to and possession of the victim's property.[9]

***Sufficiency of the Evidence on Felony Convictions***

[¶32]  Now that we have found, as we have in the past, that the crime of obtaining property by false pretenses pursuant to Wyo. Stat. Ann. § 6-3-407 requires that the victim consensually parts with both title and possession, we must decide whether there was

---

[9] Regarding the State's interpretation of the false pretenses statute, it takes an austere approach and says that because the term "title" is not contained in the statute, proof of it is not required.  While § 6-3-407 does not refer to title, that omission is not meaningful.  The word "obtain" is a term of art requiring that title and possession of the property must pass.  This was required at statehood and beyond, and remains a requirement to the present day.  To accept the State's literal reading would render other requirements unnecessary and produce absurd results.  *See Hede v. Gilstrap*, 2005 WY 24, ¶ 6, 107 P.3d 158, 163 (Wyo. 2005).  For example, reliance on the misrepresentation is not expressly required by the statute.  Nevertheless, in *Maycock*, we made it clear that "[i]ndispensable to the establishment of this crime is proof that the victim relied on the alleged false pretense; that is, proof the alleged false pretense was the controlling factor which induced the victim to part with his property." 2011 WY 104, ¶ 9, 257 P.3d at 22; *see also Miller*, 732 P.2d at 1062.  If we were to accept the State's approach, it would not have to prove reliance by the victim on a representation because the statute does not expressly require it.  We do not believe that the legislature intended the absurd result that a defendant could be convicted of a felony based on a misrepresentation upon which the alleged victim did not rely.

11

sufficient evidence to convict Bohling of that crime. Even applying the very deferential standard that governs our review, we cannot say that there is.

[¶33] When reviewing a sufficiency of the evidence claim, we must accept as true the State's evidence and all reasonable inferences which can be drawn from it. *Sweets*, ¶ 14, 307 P.3d at 865. We cannot consider conflicting evidence presented by Bohling. *Id.* "We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt." *Id.*

[¶34] Because of the State's mistaken belief that passing of title was not required for a charge of obtaining property by false pretenses, its case went awry[10] when it amended the information on the first four felony counts.[11] The State's theory on these charges is still somewhat opaque, as it is still not entirely clear to this Court whether the property claimed to have been obtained by deception was the cameras and electronic equipment, or if it was instead the county money used to pay for those items.

[¶35] The amended information says in a general fashion in Counts I through IV that Bohling "did knowingly obtain property from Albany County, Wyoming by false pretenses with the intent to defraud . . . ." The bill of particulars sheds some light on the State's theory, explaining that:

> As to Count One, the crime of Obtaining Property by False Pretenses was committed by Defendant . . . when he purchased a Nikon D7000 camera and accessories and submitted voucher number 78883 to the Board of County

---

[10] We do not speculate as to whether the State could prove the elements of larceny by bailee. It is only clear that passage of title is an element of false pretenses, while transfer of possession suffices for larceny. Larceny by bailee had additional elements beyond possession, including "intent to steal or deprive." Wyo. Stat. Ann. § 6-3-402(b); § 6-3-401(a)(i) (LexisNexis 2009).

[11] This Court is mindful that the technical distinctions between false pretenses and larceny make it difficult for a prosecutor to determine the correct charge. This case is a fine example of the important intricacy. One possible approach for prosecutors to avoid this circumstance may be to join counts for each crime in a single information. Of course, there are dangers in this as well, because the jury could convict on the wrong charge and acquit on the correct one. Another avenue would be for our legislature to consolidate the crimes into one, perhaps collectively called "theft," if it deemed fit to do so. *See* 3 LaFave, *supra,* § 19.8(c)-(d). The Colorado legislature found it necessary to do just that, *see* Colo. Rev. Stat. Ann. § 18-4-401 (LexisNexis 2015), and made its statutory intent clear: "If any law of this state refers to or mentions larceny, stealing, embezzlement (except embezzlement of public moneys), false pretenses, confidence games, or shoplifting, that law shall be interpreted as if the word "theft" were substituted therefor; and in the enactment of sections 18-4-401 to 18-4-403 it is the intent of the general assembly to define one crime of theft and to incorporate therein such crimes, thereby removing distinctions and technicalities which previously existed in the pleading and proof of such crimes." Colo. Rev. Stat. Ann. § 18-4-403.

Commissioners for Albany County, thereby falsely inducing them to pay $2,499.60.

As to Count Two, the crime of Obtaining Property by False Pretenses was committed by Defendant . . . when he purchased a Nikon D7000 camera body and caused the submission of voucher number 79028 to the Board of County Commissioners for Albany County, thereby falsely inducing them to pay $1,204.35.

As to Count Three, the crime of Obtaining Property by False Pretenses was committed by Defendant . . . when he purchased a Nikon D5100 camera and accessories and submitted voucher number 81396 to the Board of County Commissioners for Albany County, thereby falsely inducing them to pay $1,555.77.

As to Count Four, the crime of Obtaining Property by False Pretenses was committed by Defendant . . . when he purchased the items detailed in Exhibit A . . . and either caused the submission of vouchers or submitted vouchers to the Board of County Commissioners for Albany County, thereby falsely inducing them to pay approximately $29,000.00.

[¶36] During the trial, prosecutors at times told the jury that the case was all about the cameras and related electronic equipment: "And again, ladies and gentlemen, this case is about that property that the defendant purchased with the county's money. It's about the property. It's about who bought it, who paid for it, who used it, and what it was used for." Yet at other times, prosecutors seemed to suggest that the case was about the county money that was used to pay for those items: "The whole reason to talk about cameras is to figure out where the money went and how the defendant benefitted. Sure, the money didn't go straight to his pocket, but it went to property that was for his personal benefit."

[¶37] In an apparent effort to avoid any ambiguity, the verdict form listed each camera and related piece of electronic equipment in relation to the false pretenses counts to which they pertained. The form required the jury to determine which were obtained by false pretenses. If the jury did not select the items as being obtained by false pretenses, it was to find Bohling not guilty of the charge. Thus, from the verdict form it appears that the cameras and related items were the property, not the money. By way of example, the verdict form states with regard to Count I:

13

**COUNT ONE – OBTAINING MONEY BY FALSE PRETENSES**

    As to the charge in Count I of Obtaining Property by False Pretenses, before you deliberate as to your ultimate verdict, you must answer the following question. As with all other deliberations in cases of this nature, your answer must be based upon your unanimous, collective opinion and must be determined beyond a reasonable doubt.

    Please indicate which, if any, of the items of property listed below was obtained by false pretenses by the defendant, as discussed in Count I:

  √ Camera Nikon D7000 with 18-105 lens

  √ Nikon 35 mm 1.8G lens

  √ Nikon speedlight unit SB-400 x 2

  √ Nikon 55-200 mm lens

  √ Nikon 50 mm lens

  √ Shipping expense

*(If you have selected <u>none</u> of the above items, you must find the defendant "Not Guilty" of the charge of Obtaining Property by False Pretenses, however you must continue to deliberate on the other charges.*
  *If, on the other hand, you have selected <u>any</u> of the above items, you must continue to deliberate and determine your ultimate verdict in accordance with all of the instructions.)*

However, at oral argument, this Court asked the State what the property alleged to have been obtained by false pretenses was, to which counsel responded that the money was the property.

[¶38] Because it remains unclear what the property at issue actually was under the charges in question, we will examine the evidence relating to both the physical items and the county money used to pay for them. With respect to the cameras and other electronic equipment, the only evidence presented by the State regarding the county's intention to give title, or ownership, of the items to Bohling comes from the testimony of several county commissioners. Unfortunately for the State, the commissioners testified that the county never intended to transfer title or ownership of the items to Mr. Bohling. Commissioner Sullivan testified as follows:

  Q. [A]ll the property that we've talked about, cameras and so forth, who owns that?

A. The county.

Q. Albany County, Wyoming?

A. That's correct.

\* \* \*

Q. So the Board of County Commissioners never relinquished ownership of any county item to Mr. Bohling, correct?

A. That's correct.

Q. So all the cameras, all the tablets, hard drives, all owned by the county; correct?

A. That's correct.

Commissioners Chestnut and Kennedy also testified that the items purchased with the county's money were owned by the county.

[¶39] Even if the above evidence was disregarded—despite the fact that the commissioners were called to testify by the State—there is no evidence in the record supporting the position that ownership of the cameras and related electronic equipment passed from the county to Bohling. The State simply did not prove that the county, having been deceived, intended to transfer title (ownership) of the items in question.

[¶40] The State's theory that the property obtained was the county money used to pay for the items fares no better. There is no question that the cameras and other equipment were purchased by Bohling in two specific ways. He either charged the items on a county credit card that was issued to him in his official capacity, or he charged the items to an account that the county maintained with a vendor, such as Sam's Club. Once the vouchers were submitted, the county commissioners reviewed and approved them, and the county treasurer then directly paid the credit card company or vendor.

[¶41] Nevertheless, the State says that because the county parted with its money for Bohling's benefit, the false pretenses charges were correct, and there was sufficient evidence to convict. We must disagree. First, there is no evidence that the county gave Bohling any money with the expectation of never getting it back from him. This is not a situation where Bohling personally paid for the items and the county then gave him money as reimbursement. There is no plausible way Bohling could have obtained title to it under the facts of this case.

15

[¶42] Second, we question how the evidence could possibly have shown that Bohling obtained possession of the money in question. While there is no dispute that he obtained possession of the cameras and other equipment, the record does not reveal any instance where he obtained possession of any county money which paid for these items.

[¶43] Lastly, assuming *arguendo* that the county had given Bohling money for the specific items purchased, "[i]t is generally held that where the victim hands money to the wrongdoer with the understanding that the latter is to spend it only for a particular purpose (thus creating an agency or trust, it would seem) title does not pass to the wrongdoer – he has only a power to pass title by spending it for the specified purpose." 3 LaFave, *supra*, § 19.7(d)(2); *see Reid v. Com.*, 781 S.E.2d 373, 376 (Va. App. 2016).

[¶44] In sum, the fatal flaw in the State's case is that it failed to produce any evidence that the county intended to pass title of any of the claimed property to Bohling. Even when viewed in the most favorable light possible to the State, the evidence it presented could not establish beyond a reasonable doubt that Bohling obtained the property in a manner made unlawful by Wyo. Stat. Ann. § 6-3-407. Consequently, Bohling's four felony convictions must be reversed.

*Misdemeanor Conviction*

[¶45] Bohling argues that his misdemeanor conviction for official misconduct ought to be overturned based on the same theory he argues as to the felony counts. However, he provides no cogent argument or citation to supporting authority for that proposition. Consequently, we will not consider the issue and construct an argument for him. *See Willey v. Willey*, 2016 WY 116, ¶ 30, 385 P.3d 290, 299 (Wyo. 2016) ("We decline to consider this issue. It is vague and undefined and, to the extent we can decipher the argument, it is not supported by any cogent argument or authority."); *Hamburg v. Heilbrun*, 889 P.2d 967, 968 (Wyo. 1995) ("We need not consider issues which are not supported by proper citation of authority and cogent argument or which are not clearly defined."). Bohling's misdemeanor conviction for official misconduct is, therefore, affirmed.

## CONCLUSION

[¶46] The elements for the crime of obtaining property by false pretenses under Wyo. Stat. Ann. § 6-3-407 consist of (1) the pretenses; (2) their falsity; (3) the fact of obtaining property by reason of the pretenses; (4) the knowledge of the accused of their falsity; and (5) the intent to defraud. With regard to the third element, it requires that the accused obtain title to and possession of the victim's property.

[¶47] There was insufficient evidence to sustain Bohling's convictions for the crime of obtaining property by false pretenses. The case is remanded to the district court with direction that the judgment and sentence be vacated as to Counts I through IV.

[¶48] The misdemeanor conviction for official misconduct on Count VII is affirmed.