# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 88

APRIL TERM, A.D. 2020

*July 10, 2020*

ANGELA NATALIE FOX a/k/a ANGELA
NATALIE JARVIS,

Appellant
(Defendant),

v.

S-19-0237

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Johnson County*
*The Honorable William J. Edelman, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel.

*Representing Appellee:*

Bridget L. Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Timothy P. Zintak, Assistant Attorney General.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    A jury convicted Angela Natalie Fox, a/k/a Angela Natalie Jarvis (Ms. Fox), of three counts of felony theft following her use of two credit cards to purchase personal items and services.  Ms. Fox appeals, arguing the evidence was insufficient to support her convictions.  We affirm.

## *ISSUE*

[¶2]    Whether sufficient evidence supported the jury's verdict.

## *FACTS*

[¶3]    Ms. Fox was the chief operating officer and executive director of the Buffalo Chamber of Commerce (the Chamber).  Her position required her to manage the Chamber's day-to-day operations.  The Chamber authorized Ms. Fox to use two credit cards—each issued in the Chamber's name and with two different banks in Buffalo, Wyoming—to carry out that business.  Ms. Fox took the credit card statements, compiled them using QuickBooks, and presented that information to the Chamber's executive board (the Board). The Board would then approve payment from the Chamber's funds.

[¶4]    Lucinda Kremers, a Board member, became suspicious of Ms. Fox's use of the Chamber credit cards after a dinner event in mid-2017.  Ms. Fox invited her husband, child, and Ms. Kremers to a dinner hosting several travel writers.  Ms. Fox paid for each attendee's meal with a Chamber credit card.  Although buying dinner for the travel writers was an expected use of the Chamber's credit cards, it was unusual for her to purchase dinner for her husband, child, and Ms. Kremers—making Ms. Kremers "watch more diligently" Ms. Fox's use of the credit cards.

[¶5]    In the weeks following the dinner, Ms. Kremers pulled the Chamber's credit card statements, which revealed various "personal charges" by Ms. Fox.  Ms. Kremers also received "multiple complaints about [Ms. Fox] and her husband's behavior during Longmire Days" where people suggested Ms. Kremers "better check [the] credit card usage with the [C]hamber."  Armed with the credit card statements and complaints, Ms. Kremers and one other Board member met with Ms. Fox the day before the Chamber's July Board meeting.  Ms. Fox admitted she made some personal charges but claimed there were other charges "she was justified in making."  Ms. Fox resigned at the Board meeting the next day.

[¶6]    The Board hired Alexandra Wilkinson to perform a forensic audit in the wake of Ms. Fox's resignation.  Ms. Wilkinson reviewed the Chamber's financial documents and compiled a report which showed various personal charges she believed Ms. Fox made between April 6, 2014, and June 8, 2017.  Notable transactions included:

1

- $476.08 spent at Walgreens on February 19, 2016.

- $374.70 spent at United Airlines for a plane ticket for Ms. Fox's husband on March 31, 2015.

- $710.48 spent on various items and incurred in international transaction fees, during a trip to Puerto Vallarta where Ms. Fox attended her sister's bachelorette party, between April 24 and 27, 2015.

- $1,595.70 spent at a wedding boutique and jewelry store in November 2015, and $1,846.01 for the liquor bill at Ms. Fox's wedding reception in January 2016.

Ms. Wilkinson also noted that Ms. Fox falsely described multiple purchases on her QuickBooks records and some original credit card statements were missing from the Chamber's records. The Board had paid the credit card bills covering all these purchases.

[¶7]    The State filed an amended felony information on January 11, 2019, alleging Ms. Fox committed three separate counts of theft in violation of Wyo. Stat. Ann. § 6-3-402(a). Each count stemmed from Ms. Fox's use of the Chamber's credit cards over different time spans: Count I, April 6, 2014, through November 18, 2015; Count II, January 7 through June 18, 2016; and Count III, January 8 through June 8, 2017. At trial, the State called an employee from each issuing bank, Ms. Kremers, five previous Board members, one current and one former Chamber employee, the owner of the hotel where Ms. Fox held her wedding reception, and Ms. Wilkinson.

[¶8]    The jury convicted Ms. Fox on each count using a special verdict form. For each count, the form first asked whether the jury found Ms. Fox guilty or not guilty. If it found her guilty, then the jury was instructed to further indicate under which theory—"unlawfully or knowingly tak[ing]," "unlawfully or knowingly exercis[ing] unauthorized control of," or both—it found her guilty. The jury found her guilty under both theories on each count. Ms. Fox appeals each count of the verdict.

### STANDARD OF REVIEW

[¶9]    In reviewing whether the State presented sufficient evidence for the jury to convict Ms. Fox,

> [we] decide whether any rational trier of fact could have found that the essential elements of a charged crime were proven beyond a reasonable doubt on the evidence presented. In doing so, we assume that the State's evidence is true, disregard any

evidence favoring the defendant, and give the State the benefit of every favorable inference that may reasonably be drawn from the evidence. We will not reweigh the evidence or re-examine witness credibility. Because direct evidence of intent is rare, and circumstantial evidence is most often the only proof available, we have held that intent may be proven by circumstantial evidence alone.

*Garza v. State*, 2020 WY 32, ¶ 8, 458 P.3d 1239, 1241 (Wyo. 2020) (quoting *Bittleston v. State*, 2019 WY 64, ¶ 17, 442 P.3d 1287, 1292 (Wyo. 2019)).

## *DISCUSSION*

[¶10] The jury convicted Ms. Fox of three separate counts of violating Wyoming's consolidated theft statute, Wyo. Stat. Ann. § 6-3-402(a).[1] The statute defined theft as occurring when the defendant "knowingly takes or exercises unauthorized control over . . . an interest in the property of another person with the purpose of depriving the other person of the property." Wyo. Stat. Ann. § 6-3-402(a) (LexisNexis 2019).

[¶11] Accordingly, the court instructed the jury on the elements with respect to each theft count as follows:

1. [Within the relevant date range];

2. In Johnson County, Wyoming;

3. The Defendant, Angela Fox;

4. Knowingly took, or exercised unauthorized control, over an interest;

5. In the property of the Buffalo Chamber of Commerce;

---

[1] The legislature has amended Wyo. Stat. Ann. § 6-3-402 several times. Before 2013, "[t]he Wyoming Criminal Code . . . consolidated the crimes of embezzlement under former Wyo. Stat. Ann. § 6-7-310 (1977), and larceny by bailee under former Wyo. Stat. Ann. § 6-7-303 (1977), into a single crime set forth in [the then] current Wyo. Stat. Ann. § 6-3-402(b)." *Guerrero v. State*, 2012 WY 77, ¶ 18, 277 P.3d 735, 740 (Wyo. 2012). In 2013, the legislature amended Wyo. Stat. Ann. § 6-3-402 "to combine larceny and larceny by bailee into subsection (a)[,]" repealing subsection (b). *Bohling v. State*, 2017 WY 7, ¶ 9 n.2, 388 P.3d 502, 504 n.2 (Wyo. 2017) (citing 2013 Wyo. Sess. Laws ch. 191, §§ 2, 3). The legislature recently amended Wyo. Stat. Ann. § 6-3-402, although not applicable to Ms. Fox's conviction, to combine all remaining unconsolidated theft crimes into the consolidated statute. *See* 2020 Wyo. Sess. Laws, ch. 90 (amending Wyo. Stat. Ann. § 6-3-402 among other statutes); *see also* Wyo. Stat. Ann. § 6-3-402 (LexisNexis 2020).

6. With the purpose of depriving the Buffalo Chamber of Commerce of the property;

7. And the value of the property was over $1,000.

Ms. Fox effectively conceded the first, second, third, and seventh elements by stipulating that Ms. Wilkinson's compilation of credit card charges on Exhibit 47—listing the date, vendor, location, and amount of each purchase—were completed by Ms. Fox and were personal in nature.

[¶12] Ms. Fox argued at trial that her conduct was lawful, or at least not theft under Wyo. Stat. Ann. § 6-3-402(a), because the Chamber authorized each personal purchase by voluntarily paying each credit card bill. She brings the same argument forth on appeal, adding that the evidence did not satisfy the statutory definition of "property."[2]

[¶13] At trial the prosecutor narrowly described the property as the Chamber's money. Ms. Fox argues she only possessed the credit cards, never any Chamber money. Neither the prosecutor's description nor Ms. Fox's argument is determinative. We instead look to the court's instructions and the evidence. *Haynes v. State*, 2008 WY 75, ¶¶ 21–22, 186 P.3d 1204, 1209 (Wyo. 2008). The court instructed the jury that "'property' means anything of value whether tangible or intangible, real or personal, public or private[.]" *See* Wyo. Stat. Ann. § 6-1-104(a)(viii) (LexisNexis 2019). We presume the jury followed the court's instructions. *Id*. ¶ 22, 186 P.3d at 1209.

[¶14] The jury considered evidence that Ms. Fox exercised control over the value of available credit associated with each credit card (e.g., each personal charge she made reduced the remaining available credit on a card). This is our first opportunity to consider whether the value of available credit on a credit card is intangible property under Wyo. Stat. Ann. § 6-1-104(a)(viii), and we adopt the sound reasoning of courts that have deemed available credit to be property subject to theft. *See People v. Romanowski*, 2 Cal.5th 903, 915, 391 P.3d 633, 641 (Cal. 2017) (recognizing credit cards are property which may be the subject of a theft charge in the context of determining how to value that property); *People v. Barden*, 117 A.D.3d 216, 235, 983 N.Y.S.2d 534, 547 (N.Y. App. Div. 2014), *rev'd on other grounds*, 27 N.Y.3d 550, 556–57, 55 N.E.3d 1053, 1058 (N.Y. 2016) ("Because possession of the credit card number enabled defendant to access the value of Catalfamo's line of credit, the credit card number is a 'thing of value . . . which is provided

---

[2] To argue her conduct was lawful, Ms. Fox extrapolates elements pertaining to previous statutory definitions of larceny, larceny by bailee, and obtaining property by false pretenses—particularly as we addressed those elements in *Haskell v. State*, 2018 WY 85, 422 P.3d 955 (Wyo. 2018), *Bohling v. State*, 2017 WY 7, 388 P.3d 502 (Wyo. 2017), *Guerrero v. State*, 2012 WY 77, 277 P.3d 735 (Wyo. 2012), *Nguyen v. State*, 2013 WY 50, 299 P.3d 683 (Wyo. 2013), and *Powell v. State*, 2012 WY 106, 282 P.3d 163 (Wyo. 2012). Because none of these cases speak to the "exercised unauthorized control" theory under the consolidated theft statute they are inapposite here.

4

for a charge or compensation[,]' . . . and we deem it property that can be stolen and criminally possessed."); *State v. Roffler*, 69 So.3d 225, 230 (Ala. 2010) (recognizing that, "[i]n the 21st century . . . various mediums of exchange represent the same standard of value for the dollar . . . whether cash, check, debit-card transaction, credit-card transaction, electronic funds, etc.").

[¶15]   As these cases show, a credit card has value independent of its material form. *See Romanowski*, 2 Cal.5th at 915, 391 P.3d at 641. A credit card grants the user access to the full value of the account holder's line of credit. *See Barden*, 117 A.D.3d at 235, 983 N.Y.S.2d at 547. Thus, the credit card user may make purchases (i.e., charges) up to that account limit. *Id.* While those charges do not convey physical money, the credit card serves as a medium of exchange for the same standard of value for the dollar. *See Roffler*, 69 So.3d at 230. This rationale forms the bedrock of our notation in *Powell* that "the money represented by . . . checks" is intangible property under Wyo. Stat. Ann. § 6-1-104(a)(viii). *Powell*, ¶ 13 & n.6, 282 P.3d at 167 & n.6. Accordingly, we hold that the value of available credit on a credit card is intangible property under Wyo. Stat. Ann. § 6-1-104(a)(viii).

[¶16]   We must now determine whether the record contains sufficient evidence to support a finding that Ms. Fox either "took" or "exercised unauthorized control" over the available credit on the Chamber's credit cards. Because the jury convicted Ms. Fox on both theories on each count, the evidence need only be sufficient with respect to one theory to uphold her convictions. *See Dugan v. State*, 2019 WY 112, ¶¶ 47–49, 451 P.3d 731, 745–46 (Wyo. 2019). Under the latter theory, Ms. Fox does not challenge the evidence showing she exercised control over the available credit. She instead cites *Powell* and *Nguyen* to argue the Chamber authorized her control by voluntarily paying each credit card bill.

[¶17]   Those cases offer Ms. Fox no support. In both *Powell* and *Nguyen*, the fact that the victims voluntarily parted with their property was important solely because Ms. Powell's and Mr. Nguyen's larceny convictions required evidence of a trespassory taking. *See Powell*, ¶¶ 11–12, 282 P.3d at 166 (noting the State's "fatal flaw . . . that it produced no evidence whatsoever of a trespassory taking"); *Nguyen*, ¶ 14, 299 P.3d at 687 (addressing whether "the factual basis was inadequate as a matter of law because it did not establish the 'taking' element of the crime of larceny"). The "exercised unauthorized control" theory on which the jury convicted Ms. Fox is in no way dependent on a showing of voluntary action or proof of trespass. *See* Wyo. Stat. Ann. § 6-3-402(a). The jury simply needed to find that the Chamber never authorized Ms. Fox to use available credit on the two credit cards for personal purchases. *See id.*

[¶18]   The evidence showing Ms. Fox lacked authority to use the Chamber's credit cards for personal purchases was more than sufficient to support the jury's verdict. Ms. Kremers, five former Board members, as well as one Chamber employee, testified that the Chamber's credit cards were for Chamber-business purposes only. Ms. Kremers and Mr. Jon Williams, a former Board member, testified that Ms. Fox knew her authority to use the

Chamber's credit cards was limited to Chamber-business purchases only. Circumstantial evidence further indicated Ms. Fox knew she lacked authority to use the Chamber's credit cards for personal purchases, as the jury heard testimony that Ms. Fox concealed her use of the Chamber credit cards on multiple occasions by not maintaining monthly statements. When Ms. Fox did generate monthly statements, she often falsified the explanations of the personal charges on QuickBooks to reflect a proper business expense. *See State v. Faulkner*, 75 Wyo. 104, 117, 292 P.2d 1045, 1050 (Wyo. 1956) (citing 1 Brill, Cyclopedia Criminal Law, Embezzlement § 551) ("The necessary intent [for embezzlement] may be inferred from the circumstances surrounding the transaction, such as concealment of the receipt or appropriation of the money or property, the falsification of accounts, the expenditure of the money, flight, and the like.").

[¶19] Despite her knowledge concerning authorized use of the cards, Ms. Fox stipulated that she made each personal purchase listed on Exhibit 47. Ms. Kremers testified the Chamber never authorized her to make any of those purchases. Viewing this evidence as true and giving the State the benefit of every favorable inference, *Garza*, ¶ 8, 458 P.3d at 1241, the jury could reasonably conclude Ms. Fox's exercise of control over the Chamber's property was unauthorized.

## *CONCLUSION*

[¶20] The value of available credit on a credit card is intangible property subject to theft under Wyo. Stat. Ann. § 6-3-402(a). Sufficient evidence showed Ms. Fox exercised unauthorized control over the Chamber's property.

[¶21] Affirmed.

6