**Kenneth L. BARKER, Appellant (Defendant below),**

v.

**The STATE of Wyoming, Appellee (Plaintiff below).**

**No. 5089.**

Supreme Court of Wyoming.

Sept. 6, 1979.

Gerald M. Gallivan, Director, Wyoming Defender Aid Program; C. Robert Klus, Jr., Senior law student; and Rocklon L. Edmonds, student intern, Laramie, for appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div.; and

Richard Scott Rideout, Asst. Atty. Gen., Cheyenne, for appellee.

Before RAPER, C. J., and McCLIN-TOCK, THOMAS, ROSE and ROONEY, JJ.

ROSE, Justice.

This appeal by appellant-Kenneth L. Barker from a conviction of obtaining property by false pretenses under § 6–3–106, W.S.1977[1], presents only one issue which we need resolve, namely:

Was § 6–3–106, W.S.1977 (the false-pretenses statute, fn. 1, supra), repealed by § 6–3–110, W.S.1977[2] (the insufficient-funds-check law), insofar as the use of a check with insufficient funds is concerned, thereby precluding a conviction under § 6–3–106?

We will hold that it was not, and affirm the trial court.

We parse the aforementioned statutes as follows:

The *insufficient-funds* statute—§ 6–3–110 (later statute) provides:

(1) Whoever writes an insufficient-funds check with intent to defraud *by obtaining property* or

(2) whoever writes an insufficient-funds check with intent to defraud *in the payment of any obligation*

is guilty of a crime.

1. Section 6–3–106, W.S.1977, provides, in relevant part:

"If any person or persons shall knowingly and designedly, by false pretense or pretenses, obtain from any other person or persons any choses in action, money, goods, wares, chattels, effects, or other valuable thing whatever, with intent to cheat or defraud any such person or persons of the same, every person so offending shall be deemed a cheat, and upon conviction, where the value of such chose in action, money, goods, wares, chattels, effects or other valuable thing shall be twenty-five dollars ($25.00) or more, shall be imprisoned in the penitentiary for a period not more than ten (10) years. . . . ."

2. Section 6–3–110, W.S.1977, provides, in relevant part:

The *false-pretenses* statute—§ 6–3–106 (earlier statute) says:

Whoever by *false pretenses obtains property* . . . is guilty of a crime.

The essential facts are that Barker opened a checking account with the First Wyoming Bank of Rawlins on April 25, 1978. At the same time, he had the bank prepare a "customer's draft" directing a Montana bank to transfer by wire $30,-000.00 to the Rawlins Bank, while representing that he had sufficient funds in the Montana bank to cover the draft. In point of fact, appellant had no current account with the Montana Bank. The following day, Barker returned to the First Wyoming Bank of Rawlins and cashed a $500.00 check against his new checking account. The Rawlins bank cashed Barker's check without ascertaining whether or not the Montana bank had wired the money as he had requested. The Montana bank returned the "customer's draft" unpaid, and the check drawn against the new Rawlins account was without funds.

Appellant seems to concede that the State has proved all of the elements of the crime of obtaining property by false pretenses (§ 6–3–106, supra). *Driver v. State,* Wyo., 589 P.2d 391, 393 (1979), reh. den. It is, however, his contention that § 6–3–110, supra, was the statute that was violated and that § 6–3–110 repeals § 6–3–106, su-

"(a) Whoever, with intent to defraud by obtaining money, merchandise, property, credit, or other thing of value, although no express representation is made in reference thereto, or who, in the payment of any obligation, shall make, draw, utter or deliver any check, draft or order for the payment of money in the sum of fifty dollars ($50.00) or upwards upon any bank, depository, person, firm or corporation, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer has not sufficient funds in such bank, depository, person, firm or corporation for the payment of such check, draft or order in full upon its presentation, shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than one thousand dollars ($1,000.00) or imprisoned in the county jail for not more than one (1) year or both. . . . ."

pra, by implication; therefore he was not subject to trial and conviction under § 6–3–106.

Appellant observes that the false-pretenses statute (§ 6–3–106, supra) was enacted earlier than the insufficient-funds statute (§ 6–3–110, supra), and since the violation of the earlier statute is a felony if the value of the property wrongfully obtained is $25.00 or greater, and since both statutes prohibit the same, identical act, he, therefore, is entitled to be charged with and tried for violation of § 6–3–110, the later insufficient-funds statute (violation of which is a misdemeanor) instead of the more stringent statute making it a crime to obtain property under false pretenses.

The State responded by urging that §§ 6–3–106 and 6–3–110 are calculated to govern different categories of criminal conduct and, therefore, require proof of distinct and different material or essential elements. They do not, it is therefore contended, conflict in the factual setting of this case and no repeal by implication is required.

▮ Our inquiry leads us to the conclusions that obtaining property is never a necessary element of violating the insufficient-funds statute, while the obtaining of property is always a necessary element of the false-pretenses enactment. The insufficient-funds statute prohibits two types of conduct: (1) The mere issuance of a bad check with *intent to defraud by obtaining property* is a violation of the statute, and we do not read in a requirement that property must actually be obtained. (2) Giving a bad check in payment of an obligation is also a violation of the statute, in which case the crime may be committed even though property is not obtained as a result of writing the bad check.[3]

There is authority from other jurisdictions to the effect that, if an insufficient-funds statute does not require as an ele-

ment for its violation the actual obtaining of property, a prosecution for a more serious theft offense is proper where an insufficient-funds check is issued and property is obtained. *State v. Roderick,* 85 Idaho 80, 375 P.2d 1005, 1007 (1962); *Christiansen v. State,* Tex.Cr.App., 575 S.W.2d 42, 44 (1979); *State v. Covington,* 59 N.J. 536, 284 A.2d 532, 533 (1971); and *State v. Culver,* 103 Ariz. 505, 446 P.2d 234, 236 (1968).

The State also urges that where the deceit extends beyond the mere passing of an insufficient-funds check, an insufficient-funds statute should not serve to provide protection against a greater theft offense. Authority for this proposition is found in *State v. Hodge,* 266 Minn. 193, 123 N.W.2d 323 (1963). In that case the Supreme Court of Minnesota stated that the mere passing of an insufficient-funds check would not suffice for prosecution of the felony of swindling—as opposed to prosecution for the gross misdemeanor of issuing checks with knowledge of insufficient funds to back them. However, the court found that additional misrepresentations—defendant's use of his wife's maiden name, a driver's license in that name, the wearing of post office insignia—sufficed to support a felony conviction. Additional authority for this point is found in the discussion in *People v. LaRose,* 87 Mich.App. 298, 274 N.W.2d 45, 47 (1978), reh. den., of *People v. Vida,* 2 Mich.App. 409, 140 N.W.2d 559 (1966), aff'd 381 Mich. 595, 166 N.W.2d 465 (1969).

We also find instructive the following thoughts on legislative intent from the Supreme Court of Iowa on the difference between the then-existing misdemeanor bad-check statute and the felony of cheating by false pretenses:

> " . . . It may have been thought that the drawing of checks upon depleted bank accounts was a sin so nearly universal, and which carried so many gradations of moral turpitude, that, even though fraudulent, a seven-year term in the peni-

3. See, *Bailey v. State,* Wyo., 408 P.2d 244 (1965), in which defendant was convicted of writing a bad check to settle an account for a series of meals previously received.

tentiary was too severe a punishment therefor . . . Section 13047 [the bad-check statute] seems to cover completely those cases of false pretense *wherein the pretense consists in presenting a check* upon a bank where knowingly sufficient funds are not on deposit . . ." [Emphasis supplied] *State v. Marshall,* 202 Iowa 954, 211 N.W. 252, 253 (1926).[4]

In our case, it is clear that the appellant's deceitful scheme extended beyond the mere writing of a bad check and a simple express or implied assurance that the check was good.

 The combination of these two arguments for affirmance persuades us to affirm this conviction, with the holding that the crime of obtaining property by false pretenses has been and can be committed, notwithstanding the fact that the property was obtained by writing a bad check where, as in this case, (1) the accused actually obtains property by writing a bad check, and (2) the false representation is more than a simple express or implied statement that the check is good, and (3) all of the other elements of the crime of obtaining property by false pretenses are met.

Affirmed.

---

**4.** It is true that in the above-cited Iowa case the defendant was held to be chargeable only under the misdemeanor bad-check statute rather than the felony of cheating by false pretenses. However, in that case the defendant made no misrepresentations other than the presenting of the check. But, a year later the same court had occasion to consider a more elaborate swindle involving a bad check and held that prosecution for the felony of cheating by false pretenses was proper. *Shufeldt v. Hollowell,* Iowa, 214 N.W. 531 (1927). Arguably, Shufeldt's conduct fell within the literal language of the then-existing misdemeanor statute (reproduced in *Marshall,* supra, at 211 N.W. 252), but this did not protect him from the felony prosecution.