BOOMGAARDEN, Justice.
[¶1] Appellant, Stephen Haskell, appeals his convictions for obtaining property by false pretenses, acting as a public officer before qualifying, submitting false claims with intent to defraud, and wrongfully taking or disposing of property. We reverse his conviction for obtaining property by false pretenses and affirm his remaining convictions.
*958 ISSUES
[¶2] We phrase the issues on appeal as follows:
1. Was there sufficient evidence to support Mr. Haskell's felony conviction for obtaining property by false pretenses under Wyo. Stat. Ann. § 6-3-407(a)(i) ?
2. Did the trial court abuse its discretion when it did not instruct the jury that the elements of the crime of obtaining property by false pretenses included finding Mr. Haskell obtained both possession and title of Sublette County's property?
3. Was ordering uniform items a duty of the office of Sublette County Sheriff for the purposes of Mr. Haskell's conviction for performing the duties of a public officer before qualifying, in violation of Wyo. Stat. Ann. § 6-5-116 ?
4. Was the evidence sufficient to support a conviction for submitting a false claim with intent to defraud under Wyo. Stat. Ann. § 6-5-303(b) ?
5. Did cumulative error deprive Mr. Haskell of a fair trial?
FACTS
[¶3] Stephen Haskell won the August 2014 primary election for Sublette County Sheriff on a platform that included purchasing new uniforms for the sheriff's office. He became the sheriff-elect after the general election in early November and began preparing to take office. His preparations included a meeting in late November with two of the sitting county commissioners. The three men discussed the sheriff-elect's plans, including purchasing new uniforms, but the commissioners did not explicitly or implicitly authorize Mr. Haskell to order any uniforms.
[¶4] Nevertheless, without first consulting with the sitting sheriff or seeking formal approval from the board of county commissioners, Mr. Haskell set out to order new uniforms and related items, such as patches and badges. He wanted the uniforms for himself and the future members of his command staff to be ready to wear by January 5, 2015, the date of his swearing-in ceremony. He personally placed orders with two companies the sheriff's office had done business with in the past. However, he placed the orders in name of the sheriff's office and did not personally pay for the ordered items. Witnesses from one of the companies later testified they were concerned the orders came prior to Mr. Haskell taking office and did not come from the sheriff's office staff the company normally worked with.
[¶5] On January 5, 2015, Mr. Haskell and his new command staff arrived at the ceremony wearing new uniforms. County officials and employees at the ceremony took notice. At their meeting the following day, the commissioners criticized Mr. Haskell for ordering the uniforms before he had been sworn in. Some of the items Mr. Haskell ordered had not arrived before the swearing-in ceremony, but Mr. Haskell told the commissioners the only items he ordered were what he and his command staff wore at the ceremony. The value of those items was reportedly around $900. Mr. Haskell told the commissioners he would pay for those items.
[¶6] After the commissioners' meeting, an employee who regularly processed invoices for the sheriff's office received invoices from one of the companies and noticed the order dates were before the new sheriff was sworn in. The employee notified Mr. Haskell about her concerns, and Mr. Haskell contacted the companies to change the order dates in their records to dates after January 5, 2015. The companies complied. Afterwards, Mr. Haskell told the employee the office would be receiving new invoices and he directed her to shred the original copies, which she reluctantly did. However, when the employee later received the modified invoices from the company, she again went to Mr. Haskell and told him that she was uncomfortable submitting the documents to the county commissioners to approve payment. Mr. Haskell downplayed her concerns. When a second employee separately received the amended invoices, and approached Mr. Haskell about her concerns, he dismissed those as well.
[¶7] Around early February, the county commissioners received invoices and vouchers for payment from the companies and learned Mr. Haskell had ordered more items than he originally represented. The commissioners revisited the issue at their next board meeting on February 17, 2015, which Mr. *959 Haskell attended. The commissioners told Mr. Haskell they would not pay for items ordered before January 5. Mr. Haskell reiterated he would pay for anything ordered before that date. The commissioners ultimately approved paying for the items the invoices listed as ordered after January 5, but, unknown to the commissioners, those items included some whose order dates Mr. Haskell had modified. The commission approved payments of around $12,000 to the two companies. The commissioners testified that they relied on the order dates represented by Mr. Haskell and would not have paid for the items if they had known the order dates were incorrect.
[¶8] Weeks later, a county dispatcher came across a recording of one of Mr. Haskell's calls to the companies asking them to change the order dates. The commissioners eventually obtained and reviewed the recording. They requested the Department of Criminal Investigation (DCI) to look into the matter, and DCI's investigation led to criminal charges and Mr. Haskell's arrest. He was charged under five counts: Count I-felony of obtaining property by false pretenses; Count II-felony of wrongfully taking property; Count III-felony of submitting a false claim with intent to defraud; Count IV-misdemeanor of public officer acting before qualifying; and Count V-official misconduct.
[¶9] Mr. Haskell's jury trial began on February 21, 2017, and lasted four days. The State rested its case on the third day and Mr. Haskell's counsel moved for a judgment of acquittal under W.R.Cr.P. 29 on Counts I, II, and V. Regarding Counts I and II, defense counsel argued the State had not proven the county passed title to its property to Mr. Haskell. For Count V, he claimed the State had not shown any official duties regarding which Mr. Haskell had committed an unauthorized act with intent to obtain pecuniary benefit. The court granted the motion regarding Count V and denied it for Counts I and II. The court dismissed Count V and sent Counts I through IV to the jury.
[¶10] After considering the Rule 29 motion, the court held a jury instruction conference. The court's jury instructions included a general instruction on the elements of the crime of obtaining property by false pretenses. Relevant to the issues on appeal, Mr. Haskell asked the court to also instruct the jury to find that Mr. Haskell had to obtain both title and possession of the county's property, as required by our decision in Bohling v. State , 2017 WY 7, 388 P.3d 502 (Wyo. 2017). The State's attorney told the trial court Mr. Haskell's proposed instruction was a correct statement, but argued instructing the jury members on the "title concept" would confuse them. The trial court accepted the general elements instruction, but rejected Mr. Haskell's proposed instruction and did not instruct the jury on obtaining title and possession.
[¶11] On the morning of the trial's fourth day, the trial court met in chambers with counsel to discuss a note the court had received from a juror indicating that juror, or multiple jurors, had heard enough and did not need their notebooks.[1] Defense counsel argued the note was direct evidence there was a juror who had already made up his mind without hearing the defense's case. The trial court offered to allow defense counsel to question the note's author. However, Mr. Haskell's counsel passed on the opportunity, stating he was uncomfortable putting the juror on the spot and thought it would do more harm than good. Instead, the trial court reminded the jury members of their responsibility to listen to all of the evidence before retiring to deliberate, and the defense presented its case.
[¶12] The jury found Mr. Haskell guilty of the four charges brought before it: obtaining property by false pretenses, acting as a public officer before qualifying, submitting false claims, and wrongfully obtaining property. Mr. Haskell timely appealed.
DISCUSSION
I. Obtaining Property by False Pretenses
[¶13] Mr. Haskell challenges his conviction for obtaining property by false pretenses on *960 the grounds of insufficient evidence and erroneous jury instructions. For the jury to find he obtained the county's property by false pretenses, he argues Wyo. Stat. Ann. § 6-3-407(a)(i) (LexisNexis 2017) and the long-standing precedent recited and reaffirmed in Bohling , required the State to prove that the county passed title to its property to him. He argues the State did not meet that burden and, as a result, there is insufficient evidence to support his conviction for obtaining property by false pretenses. He also claims the trial court erred when it did not instruct the jury to find whether the county passed title to its property to him. To analyze Mr. Haskell's appeal of this conviction, we first consider his arguments regarding passing title as an element of the crime.
A. Elements of Obtaining Property by False Pretenses
[¶14] Mr. Haskell asserts one of the five elements of obtaining property by false pretenses is "to pass title to," meaning the perpetrator must obtain both possession of and title to a victim's property. He argues that Bohling highlights how that element distinguishes obtaining property by false pretenses from the crime of larceny. The State concedes that if we apply Bohling to this case, we must reverse Mr. Haskell's conviction for obtaining property by false pretenses, but asks us to instead reexamine our analysis in Bohling and conclude the State did not have to prove Mr. Haskell obtained both possession and title.
[¶15] The statute creating the felony crime of obtaining property by false pretenses states:
(a) A person who knowingly obtains property from another person by false pretenses with intent to defraud the person is guilty of:
(i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is one thousand dollars ($1,000.00) or more[.]
Wyo. Stat. Ann. § 6-3-407(a)(i) (emphasis added).
[¶16] We previously interpreted this statute in Bohling and determined the elements of the crime are: "(1) the pretenses; (2) their falsity; (3) the fact of obtaining property by reason of the pretenses; (4) the knowledge of the accused of their falsity; and (5) the intent to defraud." Id. ¶ 31, 388 P.3d at 510 (emphasis added). We further determined the meaning of "obtains" in Wyo. Stat. Ann. § 6-3-407(a) is ambiguous. Id. ¶ 20, 388 P.3d at 506. After we interpreted the legislature's intent, we concluded, "The third element, that the accused obtains property, means that the accused must obtain both title to and possession of the victim's property." Id. ¶ 31, 388 P.3d at 510. We also noted, "[T]itle is synonymous with ownership. Thus, title in this context does not always mean formal title, such as to a vehicle, rather the simple concept of ownership equates to title." Id. ¶ 29 n.8, 388 P.3d at 509 n.8 (citations omitted). We reached our conclusions, in part, by reviewing our prior case law on the crime of obtaining property by false pretenses under Wyo. Stat. Ann. § 6-3-407 and by comparing that crime with the crime of larceny (now, theft) under Wyo. Stat. Ann. § 6-3-402 (LexisNexis 2013). Id. ¶¶ 21-30, 388 P.3d at 506-10. We determined "obtain" has always been interpreted to require a wrongdoer to obtain title and possession of a victim's property. Id. ¶ 29, 388 P.3d at 509. "If only possession passes, the crime is larceny if all the elements can be proven under Wyo. Stat. Ann. § 6-3-402." Id.
[¶17] The State presents several reasons why we should reexamine Bohling . First, the State disputes whether we have always interpreted "obtains" to include obtaining both possession and title, and it argues several cases are inconsistent with our reasoning in Bohling : Sweets v. State , 2013 WY 98, 307 P.3d 860 (Wyo. 2013) ; Barker v. State , 599 P.2d 1349 (Wyo. 1979) ; Lopez v. State , 788 P.2d 1150 (Wyo. 1990) ; and Dreiman v. State , 825 P.2d 758, 761 (Wyo. 1992). The State also claims we discounted the minority approach in other jurisdictions to interpreting false pretenses crimes, which does not require obtaining title as an element of obtaining property by false pretenses. Finally, the State argues we should amend our holding in Bohling based on recent statutory changes.
*961 [¶18] We disagree with the State and decline to reconsider or limit our reasoning in Bohling . The State highlights the circumstances in Sweets , Barker , Lopez , and Dreiman and claims the cases' outcomes would have been different if the parties had raised the question of whether the defendants obtained both possession and title of the victims' property. But, that question was not an issue in those cases. See Sweets , ¶¶ 13-18, 307 P.3d at 865-66 (analyzing whether there was sufficient evidence to establish defendant had the intent to defraud); Barker , 599 P.2d at 1352 (holding that the crime of obtaining property by false pretenses can be committed even when property is obtained by writing a bad check); Lopez , 788 P.2d at 1152-53 (evaluating whether there was sufficient evidence to establish the elements of pretenses and their falsity, but "no argument [was] made that Lopez did not obtain property from the Thermopolis bank"); Dreiman , 825 P.2d at 762 (considering sufficiency of evidence to support burglary conviction based on intent to commit larceny at time of unlawful entry).[2] Although the State now argues that we should have considered the passing of title and possession when we decided those cases, the State does not reference any holding in the four cases it highlights that contradicts our conclusion in Bohling about our prior case law: "In none of our opinions concerning this crime have we ever said that the term 'obtain' means that the wrongdoer only needs to acquire possession and not title; we have always said the contrary." Bohling , ¶ 26, 388 P.3d at 508. Our conclusion in Bohling remains sound.[3]
[¶19] The State also has not demonstrated why our opinion in Bohling needed to adopt or rely on the minority approach in other jurisdictions given established Wyoming law. "In matters of first impression, we look to other jurisdictions for guidance," however, the question of whether the "obtain" element requires a victim to pass title and possession was not a matter of first impression in Bohling . Schnitker v. State , 2017 WY 96, ¶ 10, 401 P.3d 39, 42 (Wyo. 2017) (citing Hageman v. Goshen Cty. Sch. Dist. No. 1 , 2011 WY 91, ¶ 9, 256 P.3d 487, 492 (Wyo. 2011) ); see, e.g. , Martins v. State , 17 Wyo. 319, 98 P. 709, 712 (1908) ; Miller v. State , 732 P.2d 1054, 1063 (Wyo. 1987) (citations omitted). We applied pertinent Wyoming statutes and precedent and found no need to apply, or otherwise be guided by, conflicting decisions from other jurisdictions. Bohling , ¶¶ 22-31, 388 P.3d at 507-10.
[¶20] Our approach to deciding the question in Bohling in 2017 was sound and, contrary to the State's final argument against that case, the legislature has not spoken on the issue in the interim. The State claims that after our decision in Bohling , the legislature enacted legislation that changed the fundamental difference between the crimes of larceny and obtaining property by false pretenses. Notably, however, the changes the State refers to occurred well before we decided Bohling . In 2013, the legislature consolidated the crimes of larceny and larceny by bailee into a single crime of "theft" under Wyo. Stat. Ann. § 6-3-402. 2013 Wyo. Sess. Laws ch. 191, § 2.[4] The legislature did not *962 modify Wyo. Stat. Ann. § 6-3-407 and it did not eliminate the distinction between larceny (theft) and obtaining property by false pretenses. See id. Unless the legislature substantively changes that distinction, we do not need to revisit our reasoning in Bohling .
B. Obtaining Property by False Pretenses-Sufficiency of the Evidence
[¶21] Having reaffirmed our interpretation of "obtain" to include "both title to and possession of the victim's property[,]" Bohling , ¶ 31, 388 P.3d at 510, we next consider whether sufficient evidence supports Mr. Haskell's conviction for obtaining property by false pretenses. To review insufficient evidence claims, "we must accept as true the State's evidence and all reasonable inferences which can be drawn from it[,]" and we cannot consider conflicting evidence presented by a defendant. Bohling , ¶ 33, 388 P.3d at 510 (citing Sweets , ¶ 14, 307 P.3d at 865 ). Also, "[w]e do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt." Id. (quoting Sweets , ¶ 14, 307 P.3d at 865 ).
[¶22] The State argued at trial that Mr. Haskell was personally obligated to pay the companies for the items he ordered prior to taking office and he therefore received the county's property when the county paid for the items and relieved him of the responsibility of paying. In its appellate brief, the State concedes that, if we apply Bohling , the conviction should be reversed because no property or money passed from the county to Mr. Haskell.
[¶23] Our review of the evidence, when considered in the light most favorable to the State, confirms it does not establish Mr. Haskell obtained title to county property. The State's theory of how Mr. Haskell obtained Sublette County's property is like the prosecution's arguments in Bohling , wherein the defendant did not personally pay for the property at issue. See Bohling , ¶ 40, 388 P.3d at 512. Instead, he either used a county credit card or charged purchases to an account the county had with a vendor. Id. Addressing the State's argument that sufficient evidence supported Mr. Bohling's false pretenses convictions because "the county parted with its money for Bohling's benefit," we concluded:
First, there is no evidence that the county gave Bohling any money with the expectation of never getting it back from him. This is not a situation where Bohling personally paid for the items and the county then gave him money as reimbursement. There is no plausible way Bohling could have obtained title to it under the facts of this case.
Second, we question how the evidence could possibly have shown that Bohling obtained possession of the money in question. While there is no dispute that he obtained possession of the cameras and other equipment, the record does not reveal any instance where he obtained possession of any county money which paid for these items.
Lastly, assuming arguendo that the county had given Bohling money for the specific items purchased, "[i]t is generally held that where the victim hands money to the wrongdoer with the understanding that the latter is to spend it only for a particular purpose (thus creating an agency or trust, it would seem) title does not pass to the wrongdoer-he has only a power to pass title by spending it for the specified purpose." [3 Wayne R. LaFave, Subst. Crim. L. § 19.7(d)(2) (2d ed., Oct. 2016 update) ]; see Reid v. Com ., 65 Va.App. 745, 781 S.E.2d 373, 376 (2016).
Id. ¶¶ 41-43, 388 P.3d at 512-13. Mr. Haskell's conviction suffers from the same lack of evidence.
[¶24] Mr. Haskell received no reimbursement because he did not personally pay for the items he ordered. The county paid the vendors directly for the orders. If the county had provided Mr. Haskell with money to pay for the items, Mr. Haskell's authority would have been to spend the money for those items, rather than keeping and holding title to the money himself. See Bohling , ¶ 43, 388 P.3d at 513. There is no evidence the county transferred, or intended to transfer, ownership of property or money to Mr. Haskell *963 based on his misrepresentations. The evidence is therefore insufficient to satisfy all elements of the offense and the jury could not have reasonably concluded the State had proven the elements beyond a reasonable doubt.[5] See id. ¶¶ 40-44, 388 P.3d at 512-13. The jury's verdict on Mr. Haskell's conviction for obtaining property by false pretenses cannot stand and Mr. Haskell is entitled to the entry of a judgment of acquittal. See Ken v. State , 2011 WY 167, ¶ 17, 267 P.3d 567, 572 (Wyo. 2011) (quoting Tanner v. State , 2002 WY 170, ¶ 17, 57 P.3d 1242, 1247 (Wyo. 2002) ; Burks v. United States , 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978) ) ("The Double Jeopardy Clause precludes a second trial once a reviewing court has found the evidence presented in the first trial legally insufficient to support the conviction. The only 'just' remedy available upon such a finding is an order directing entry of a judgment of acquittal.") Therefore, we reverse Mr. Haskell's conviction for obtaining property by false pretenses and remand it with instructions to enter a judgment of acquittal on that conviction.[6]
II. Public Officer Acting Before Qualifying-Sufficiency of the Evidence
[¶25] Mr. Haskell also was convicted of performing duties of his office before qualifying, in violation of Wyo. Stat. Ann. § 6-5-116 (LexisNexis 2013), which stated at the time of Mr. Haskell's alleged criminal conduct:
An elected or appointed public officer or his deputy commits a misdemeanor punishable by a fine of not more than one thousand dollars ($1,000.00) if he performs any duty of his office without taking and subscribing the oath prescribed by law or before giving and filing the bond required by law.
Wyo. Stat. Ann. § 6-5-116.
[¶26] Mr. Haskell argues we should reverse his conviction because purchasing law enforcement items for the Sublette County Sheriff's Office is not a duty of the Sublette County Sheriff. The State alleges, and we agree, Mr. Haskell raises this issue for the first time on appeal.
[¶27] We will not consider an issue raised for the first time on appeal unless there is a fundamental error affecting a substantial right of the appellant. Thompson v. State , 2018 WY 3, ¶ 24, 408 P.3d 756, 763 (Wyo. 2018) (quoting Belden v. State , 2003 WY 89, ¶ 55, 73 P.3d 1041 (Wyo. 2003) ). However, "the proposition that a defendant's guilt must be proved with competent evidence bearing upon each of the crime's elements always involves a fundamental right." Id. ¶ 25, 408 P.3d at 763 (quoting Garay v. State , 2007 WY 130, ¶ 2 n.1, 165 P.3d 99, 101 n.1 (Wyo. 2007) ). "Consequently, we do not apply waiver to a claim that the evidence was legally insufficient to support the defendant's conviction." Id. (citation omitted). In Thompson , we considered an argument raised for the first time on appeal that evidence was legally insufficient to support convictions for aggravated assault and battery by threatening to use a deadly weapon because a bottle and a clay art piece were not weapons capable of being "drawn" under the statute. See id. ,¶¶ 26-27, 408 P.3d at 763-64. Mr. Haskell's argument similarly challenges the sufficiency of the evidence for his conviction under Wyo. Stat. Ann. § 6-5-116 (LexisNexis 2017). Therefore, we will consider his claim under the sufficiency of the evidence standard explained. See supra ¶ 21.
[¶28] Mr. Haskell claims the duties of his office are limited to those provided by statute. He argues the State did not accuse him of violating the Uniform Municipal Fiscal Procedures Act, see Wyo. Stat. Ann. §§ 16-4-101 (LexisNexis 2017)et seq. , and, thus, the only statutes pertinent to the charge against him are Wyo. Stat. Ann. §§ 18-3-601 through -611 (LexisNexis 2017), which specifically govern the office of county sheriff. He alleges a county sheriff's only duty regarding *964 county funds is to not spend beyond his budget. In response, the State claims the statutes and the evidence establish that Mr. Haskell performed duties of his office in violation of Wyo. Stat. Ann. § 6-5-116.
[¶29] To resolve this issue, we first must interpret Wyo. Stat. Ann. § 6-5-116.[7] "Statutory interpretation is a question of law which we review de novo. " Adekale v. State , 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015) (citing Crain v. State , 2009 WY 128, ¶ 8, 218 P.3d 934, 938 (Wyo. 2009) ). "The plain, ordinary, and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary." Id.
[¶30] The plain language of Wyo. Stat. Ann. § 6-5-116 uses the broad phrase, "any duty of his office," and is clear and unambiguous. Regarding the term, "any," we have stated: "The common and ordinary understanding of the word is that it means all or every, or one or more. Necessarily it gives to the language employed a broad and comprehensive grasp." McKay v. Equitable Life Assurance Soc'y of U.S. , 421 P.2d 166, 169 (Wyo. 1966) (internal citations omitted); see Garton v. State , 910 P.2d 1348, 1353 (Wyo. 1996). Such is the case in Wyo. Stat. Ann. § 6-5-116.
[¶31] Under that statute, "any duty" of the office of sheriff clearly includes the specific duties listed in Wyo. Stat. Ann. §§ 18-3-601 through -611. Among those duties, a sheriff shall "[p]ay and account for all monies which come into his office, as provided by law[.]" Wyo. Stat. Ann. § 18-3-609(a)(i) (LexisNexis 2017). A sheriff also shall "[p]erform all other duties required of him by law." Wyo. Stat. Ann. § 18-3-609(a)(iv). Through this catch-all provision, the statutes specific to sheriffs incorporate legal duties found in other parts of the law, such as the Uniform Municipal Fiscal Procedures Act, Wyo. Stat. Ann. §§ 16-4-101 through -125. Consequently, those duties are also included in the broad language, "any duty of his office," in Wyo. Stat. Ann. § 6-5-116.
[¶32] The Uniform Municipal Fiscal Procedures Act governs a sheriff's office as a "department" of the county. Wyo. Stat. Ann. § 16-4-102(a)(vii) (LexisNexis 2017). As such, the sheriff and his office are subject to the act's required county budget process and restrictions on expenditures.[8] See Wyo. Stat. Ann. §§ 16-4-104(a), -108(a) (LexisNexis 2017). The act also requires, "All purchases or all encumbrances on behalf of any municipality shall be made or incurred only upon an order or approval of the person duly authorized to make such purchases except encumbrances or expenditures directly investigated and reported and approved by the governing body." Wyo. Stat. Ann. § 16-4-107 (LexisNexis 2017). We conclude that a sheriff's statutory duties pertaining to municipal fiscal procedures qualify as "any duty of his office" under Wyo. Stat. Ann. § 6-5-116.
[¶33] We now consider whether the jury could have reasonably concluded the State proved the elements of Wyo. Stat. Ann. § 6-5-116 against Mr. Haskell. The witnesses at trial testified that one duty of the Sublette County Sheriff is purchasing items for the sheriff's office. The evidence at trial also demonstrated that the Sublette County Sheriff was authorized to purchase uniforms in accordance with the county's budget for the sheriff's office. The evidence also infers that Mr. Haskell believed the sheriff had the authority and duty to purchase new uniforms because he included buying them as part of his campaign platform. This evidence is consistent with the duties of the office of sheriff recognized by Wyo. Stat. Ann. § 6-5-116 and is sufficient for the jury to have reasonably *965 concluded Mr. Haskell performed a duty of the office of sheriff before being sworn in. We therefore affirm his conviction under Wyo. Stat. Ann. § 6-5-116.
III. Filing of False Claims-Sufficiency of the Evidence
[¶34] Mr. Haskell also challenges his conviction for submitting false claims by questioning the sufficiency of the evidence. Our standard for reviewing sufficiency of the evidence claims is set forth. See supra ¶ 21. Wyo. Stat. Ann. § 6-5-303(b) (LexisNexis 2017) states: "A person is guilty of a felony punishable by imprisonment for not more than two (2) years, a fine of not more than two thousand dollars ($2,000.00), or both, if he knowingly submits a false claim or voucher with intent to defraud."
[¶35] Mr. Haskell argues that the false dates on the vendors' vouchers to the county were not sufficient evidence he had the intent to defraud the county. He claims he does not have personal responsibility to pay for items the commissioners decline to pay because the commissioners have discretion over paying or not paying vouchers, and there is an appeal process for disallowed claims against the county under Wyo. Stat. Ann. § 18-3-513 (LexisNexis 2017). He asserts that the false dates on the vouchers only established that he lied to the commission regarding their "gentlemen's agreement" on who would pay for which items, and the false dates were de minimis evidence that the claims were false because the county received the items he ordered. However, Mr. Haskell does not connect or support these arguments with any pertinent authority. He argues we should accept his arguments under a de minimis defense under common law, but he does not explain what that defense would look like or cite any case in which we recognized or applied such a defense to find insufficient evidence for a criminal conviction. Without cogent argument or citation to pertinent authority, we will not invent a de minimis defense regarding the elements of Wyo. Stat. Ann. § 6-5-303(b). See, e.g. , State v. Campbell Cty. Sch. Dist. , 2001 WY 90, ¶ 35, 32 P.3d 325, 333 (Wyo. 2001) ("Under this court's long-standing precedent, this court will not frame the issues for the litigants and will not consider issues not raised by them and not supported by cogent argument and authoritative citation.").
[¶36] Instead, after accepting as true the State's evidence and all reasonable inferences which can be drawn from it, we find there is sufficient evidence to support Mr. Haskell's conviction for submitting false claims. See Bohling , ¶ 33, 388 P.3d at 510 (citing Sweets , ¶ 14, 307 P.3d at 865 ). Mr. Haskell ordered the uniforms and related items on behalf of the county and to be paid by the county. He also intentionally had order dates changed on invoices to falsely indicate he ordered the items after he was sworn in. He told representatives of one of the companies he needed to change dates on the invoices because the county commissioners were mad at him. He also ordered the shredding of original invoices. Finally, he knew the dates were false on vouchers submitted to the commissioners for payment. Based on this evidence, the jury could have reasonably concluded all elements of the crime were proven beyond a reasonable doubt. We therefore affirm Mr. Haskell's conviction under Wyo. Stat. Ann. § 6-5-303(b) for submitting false claims.
IV. Cumulative Error
[¶37] Lastly, Mr. Haskell argues cumulative error during his trial deprived him of due process. In addition to the alleged errors already discussed, Mr. Haskell argues he was prejudiced by the jury member's note to the trial court after the State rested its case. He presumes the comments in the note referred to multiple jurors. He does not challenge his trial counsel's decision not to question the jurors, but instead argues the note demonstrated jurors were disregarding the court's instruction to withhold their judgment until they had heard both sides.
[¶38] "The purpose of evaluating for cumulative error is 'to address whether the cumulative effect of two or more individually harmless errors has the potential to prejudice the defendant to the same extent as a single reversible error.' " Guy v. State , 2008 WY 56, ¶ 45, 184 P.3d 687, 701 (Wyo. 2008) (quoting McClelland v. State , 2007 WY 57, ¶ 27, 155 P.3d 1013, 1022 (Wyo. 2007) ). "[A]
*966 series of harmless or non-prejudicial errors will only be cause for reversal where the accumulated effect constitutes prejudice and the conduct of the trial is other than fair and impartial." Sam v. State , 2017 WY 98, ¶ 61, 401 P.3d 834, 855 (Wyo. 2017), (citing Watts v. State , 2016 WY 40, ¶ 23, 370 P.3d 104, 112 (Wyo. 2016) ; Eaton v. State , 2008 WY 97, ¶ 105, 192 P.3d 36, 79 (Wyo. 2008) ). "In conducting a cumulative error evaluation, we consider only matters that we have determined to be errors." Guy , ¶ 45, 184 P.3d at 701 (citing McClelland , ¶ 27, 155 P.3d at 1022 ). "A claim of cumulative error cannot be recognized where there is no underlying error to support it." Luedtke v. State , 2005 WY 98, ¶ 36, 117 P.3d 1227, 1234 (Wyo. 2005) (citing Young v. State , 849 P.2d 754, 767 (Wyo. 1993) ).
[¶39] We determined sufficient evidence supported Mr. Haskell's convictions for submitting false claims with intent to defraud and performing the duties of the office prior to qualifying. However, we reversed his conviction for obtaining property by false pretenses due to insufficient evidence. Insufficient evidence to support a conviction is one type of error we may review for cumulative error. See Brown v. State , 817 P.2d 429, 437-38, 440 (Wyo. 1991) (reversing a conviction for insufficient evidence, but declining to analyze cumulative error because only the one error was found). Having found reversible error regarding one of Mr. Haskell's convictions, we next consider whether the juror's note caused error.
[¶40] Mr. Haskell does not argue the juror's note caused error that, by itself, would warrant reversing his convictions. Further, he does not claim that his trial attorney provided ineffective assistance by declining to question the juror who provided the note. He also does not argue the trial court, on its own motion, should have questioned the juror. Instead, he argues the note shows the jury members were disregarding their instruction to dispassionately consider and weigh the evidence. Yet, he does not refer us to any evidence on the record supporting this conclusion beyond the statements counsel and the trial court made when considering whether to question the jurors about the note.
[¶41] Based on those comments, alone, we cannot conclude whether the jury note constituted proof one or more members of the jury had, in fact, disregarded complying with their jury instructions. "We presume that jurors follow the instructions the court gives them." Moore v. State , 2013 WY 120, ¶ 17, 309 P.3d 1242, 1246 (Wyo. 2013) (citations omitted). Nothing in the record gives us cause to depart from this presumption; Mr. Haskell has failed to identify bias or partiality on the part of any of the jurors. See id. Therefore, we cannot conclude the juror's note caused error.
[¶42] Although we reversed Mr. Haskell's conviction for obtaining property by false pretenses due to insufficient evidence, we cannot find cumulative error regarding the remaining convictions without an additional error. See Brown , 817 P.2d at 440 (citations omitted) (having reversed one conviction for insufficient evidence, "We simply are unable to recognize any claim of cumulative error as to the remaining counts in the absence of some underlying error to support that claim."); Guy , ¶ 45, 184 P.3d at 701 (citation omitted) (stating the purpose of cumulative error is to consider the cumulative effect of two or more errors). We therefore conclude Mr. Haskell has not demonstrated any cumulative error that could have constituted prejudice or rendered his trial unfair.
CONCLUSION
[¶43] The evidence was insufficient to support Mr. Haskell's conviction for obtaining property by false pretenses. However, his convictions for performing the duties of a sheriff prior to qualifying and for submitting false claims were supported by sufficient evidence. We also conclude there was no cumulative error to require reversing those convictions or his conviction for wrongfully taking property. Therefore, we affirm all of Mr. Haskell's convictions, except one. We reverse Mr. Haskell's conviction for obtaining property by false pretenses and we remand with *967 instruction to enter a judgment of acquittal on that count.

The trial transcript indicates the parties and the trial court knew the identity of the note's author. However, the transcript is not clear whether the note referred to the opinion of just its author or also the opinions of other jurors. The State's attorney described the note as follows: "The note indicated they didn't need their notebooks; they thought they heard enough[.]"

Dreiman involved a conviction for burglary based on the defendant's intent to commit larceny. See 825 P.2d at 759-60. It did not involve the crime of obtaining property by false pretenses. See id. Nevertheless, the State argues our holding in Bohling conflicted with Dreiman by narrowing the shared statutory definition of "property" used for both crimes. See Wyo. Stat. Ann. § 6-1-104(a)(viii) (LexisNexis 2017). We disagree. Bohling did not interpret or otherwise change Wyo. Stat. Ann. § 6-1-104(a)(viii) or, as a result, Dreiman .

Accordingly, we find no need to address the parade of paradoxes the State presented to advocate a legislative intent different than that resolved in Bohling . See ¶¶ 20-31, 388 P.3d at 506-10. Moreover, we reject the State's suggestion that we are obliged to universally reconcile cases pertaining to Wyo. Stat. Ann. § 6-3-407 regardless of whether those cases present the same issues for decision. "Judicial restraint, after all, usually means answering only the questions we must, not those we can." Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd. , 616 F.3d 1086, 1094 (10th Cir. 2010) (citing PDK Labs., Inc. v. DEA , 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) ("[I]f it is not necessary to decide more, it is necessary not to decide more.") ).

We acknowledged those changes in Bohling when we discussed the original charges brought against Mr. Bohling. Id. ¶ 9 n.2, 388 P.3d at 504 n.2.

Mr. Haskell also argues there was insufficient evidence to establish he obtained the same property that the county parted with. Having determined there was insufficient evidence to find Mr. Haskell obtained title to the county's property, we do not address this claim.

Because the lack of sufficient evidence to support Mr. Haskell's conviction for obtaining property by false pretenses entitles him to acquittal of that conviction, we will not review his argument that the trial court erred when instructing the jury on the elements of the crime.

The legislature amended Wyo. Stat. Ann. § 6-5-116 in 2015, adding the following sentence to the then-existing statute: "This section shall not apply to training and similar minor preparation for taking office." 2015 Wyo. Sess. Laws ch. 82, § 1. We decline Mr. Haskell's request to deem his actions prior to taking office as "minor preparations." First, the legislature added this language after Mr. Haskell allegedly violated Wyo. Stat. Ann. § 6-5-116. Second, even if we did apply the new language to this case, the plain meaning of "minor preparation for taking office" would not include purchasing over $10,000 of new uniforms and related items before being sworn in.

The Uniform Municipal Fiscal Procedures Act defines "municipality" to include counties. Wyo. Stat. Ann. § 16-4-102(a)(xiv)(B).